## In re JOHN RICHARDS HOMES BUILDING COMPANY, L.L.C.

Honigman, Miller, Schwartz and Cohn, L.L.P. and John Richards Homes Building Company, L.L.C, Appellants,

v.

Kevin Adell, Appellee.

Civil Case No. 06–14355.
Bankr.Case No. 02–54689.

United States District Court,
E.D. Michigan,
Southern Division.

March 30, 2009.

*ORDER ACCEPTING THE REPORT AND RECOMMENDATION AND REVERSING THE BANKRUPTCY COURT*

STEPHEN J. MURPHY, III, District Judge.

## INTRODUCTION

The appellants Honigman, Miller, Schwartz and Cohn ("HMSC") and John Richards Homes Building Co., L.L.C ("JRH") have appealed a September 21, 2006 order of the United States Bankruptcy Court for the Eastern District of Michigan. The bankruptcy appeal was referred for a Report and Recommendation ("R & R") to the Honorable Virginia M. Morgan, United States Magistrate Judge. On November 19, 2008, the magistrate judge issued her R & R, recommending that the decision of the bankruptcy court be reversed and the case be remanded to the bankruptcy court for a decision on the merits of the request for certain attorney fees. At that time, the magistrate judge notified the parties that any objections must be filed within ten days of service. The appellee Kevin Adell filed timely objections.

Shortly before the magistrate judge issued her R & R, Adell filed a motion for partial dismissal of the appeal. Since the motion for partial dismissal was related to the underlying issues in the bankruptcy appeal, the motion was referred to the magistrate judge. On March 12, 2009, the magistrate judge issued a second R & R recommending that the motion for partial dismissal be denied. Adell again filed timely objections.

For the reasons stated below, the Court overrules both sets of objections presented by Adell, adopts both of the magistrate judge's R & Rs in a manner not inconsistent with this Order, and reverses the decision of the bankruptcy court, remanding this case for a decision on the merits of the request for attorney fees.

## STANDARD OF REVIEW

The Court's standard of review for a magistrate judge's Report and Recommendation depends upon whether a party files objections. If a party objects to portions of the Report and Recommendation, the Court reviews those portions de novo. 28 U.S.C. § 636(b)(1) (C); Fed. R.Civ.P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the magistrate judge; the Court may not act solely on the basis of a magistrate judge's Report and Recommendation. *See* 12 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 3070.2 (1997); *see also Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir.1981). After reviewing the evidence, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of the magistrate judge. 28 U.S.C. § 636(b)(1) (c). Here, the appellee Adell has filed objections; accordingly, a de novo review is required.

When a bankruptcy court decision is appealed to the district court, the bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard, while the bankruptcy court's legal conclusions are reviewed de novo. *Investors Credit Corp. v. Howard P. Batie (In re Batie)*, 995 F.2d 85, 88 (6th Cir.1993).

## ANALYSIS

This case involves a lengthy and complicated legal battle between JRH and Kevin Adell which has spanned many years and many jurisdictions. The dispute now before the Court arises out of a June 2002 involuntary bankruptcy petition filed by Adell against JRH in the United States Bankruptcy Court for the Eastern District of Michigan. In that case, based on a series of egregious actions on the part of Adell, the bankruptcy court ruled that Adell had filed the involuntary petition in bad faith, and consequently, the involuntary petition was dismissed. Pursuant to 11 U.S.C. § 303(i), upon the dismissal of the involuntary petition, the bankruptcy court awarded judgment in JRH's favor and against Adell in the following manner: $4,100,000 in compensatory damages, $2,000,000 in punitive damages, and $313,230.68 in attorney fees and costs. This judgment was later affirmed by the United States District Court for the Eastern District of Michigan and the United States Court of Appeals for the Sixth Circuit.

Following the entry of the judgment, Adell allegedly attempted to avoid payment of the judgment by, among other things, using his Michigan assets to purchase a $2.8 million Florida house, unsuccessfully claiming Florida's homestead exemption, filing for Chapter 11 bankruptcy in a Florida bankruptcy court, and then later converting his Florida Chapter 11 bankruptcy case to a Chapter 7 case. After all of the actions in Florida were dismissed, Adell paid the judgment in full on April 3, 2006.

On April 21, 2006, HMSC, the law firm representing JRH, filed a "Second Application for Compensation of Attorney Fees and Expenses" in the Michigan bankruptcy court for the amount of $1,712,974.04. In the application, HMSC sought those attorney fees and costs which were incurred after the entry of the original judgment dismissing the involuntary petition, and which were incurred in the attempt to recover the judgment through the many subsequent cases and appeals occurring in Michigan and in Florida. The bankruptcy court denied the application, stating:

> [HMSC] not only seeks attorney fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment. HMS & C has offered no legal support for this request. In light of the caselaw to the contrary, the Court must deny its application for a second award of attorney fees and costs.

*In re John Richards Homes, Co., L.L.C.,* No. 02–54689–R, 2006 WL 3228523, at *2 (Bankr.E.D.Mich. Sept.21, 2006). The appellants HMSC and JRH appealed that decision, arguing that the bankruptcy court erred in finding that it could not award attorney fees and costs incurred while trying to collect the judgment. In her R & R, the magistrate judge found that under § 303(i), a party could seek an award of post-judgment attorney fees. Accordingly, the magistrate judge recommended that the bankruptcy court ruling be reversed and remanded for a decision on the merits. The appellee Adell objected, arguing, among other things, that there is no jurisdiction to consider attorney fees and that § 303(i) does not provide for the granting of post-judgment attorney fees.

The Court has conducted a de novo review of the record, including the extensive briefings submitted by the parties. Upon this review of the record and of the relevant case law, the Court finds that Adell's objections are without merit and that the reasoning of the magistrate judge is sound and correct.

▮ As a preliminary matter, the Court finds that the magistrate judge was

correct in concluding that the bankruptcy court retains jurisdiction to consider attorney fees after the dismissal of the involuntary petition. The consideration of attorney fees is a core proceeding arising in a case under title 11, as described by 28 U.S.C. § 157, as it is inextricably intertwined with the bankruptcy case itself, which is undoubtedly a core proceeding. Bankruptcy courts retain jurisdiction of core proceedings following the dismissal of the underlying case and following the payment of the judgment. As the magistrate judge correctly demonstrated in her R & R, case law supports this conclusion. *See, e.g., In re Cooper School of Art, Inc.,* 709 F.2d 1104, 1105–06 (6th Cir.1983) ("When a bankruptcy court dismisses a petition for involuntary proceedings under Chapter XI for failure to join three or more creditors it does not lose jurisdiction for the purpose of awarding costs and attorney fees."). Adell's arguments that there is no jurisdiction or standing because this is not a core proceeding and because the application was filed not by JRH but by HMSC after the payment of the judgment are entirely unpersuasive.

■ Satisfied that the bankruptcy court has jurisdiction to consider an application for attorney fees after the dismissal and satisfaction of the judgment of an involuntary petition, the Court now considers the primary question at issue: whether § 303(i) permits the award of post-judgment attorney fees.

The relevant statute states:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-

 (1) against the petitioners and in favor of the debtor for-

 (A) costs;

 (B) a reasonable attorney's fee; or

 (2) against any petitioner that filed the petition in bad faith, for-

 (A) any damages proximately caused by such filing; or

 (B) punitive damages.

11 U.S.C. § 303(i). Although this statute clearly permits the award of attorney fees when a court dismisses an involuntary petition and issues judgment, the language is not definitive in addressing whether an award of attorney fees can be made for proceedings subsequent to the dismissal and judgment. Since the Sixth Circuit Court of Appeals has not spoken on this issue, the magistrate judge conducted an extensive survey of the case law applying § 303(i). Although there was competing case law, the magistrate judge found that the majority of cases interpreted § 303(i) to permit the award of attorney fees and costs that were incurred after the dismissal of the petition. *See In re Advance Press & Litho, Inc.,* 46 B.R. 700, 703 (Bankr.D.Colo.1984); *In re Petrosciences Intern., Inc.,* 96 B.R. 661, 665 (Bankr. N.D.Tex.1988); *In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. 796, 803–04 (Bankr.E.D.Va.1995); *In re Glannon,* 245 B.R. 882, 894 (D.Kan.2000). The magistrate judge also found that this interpretation comported with the apparent legislative intent of the statute and with the public policies that the statute was meant to advance. After its own review of the case law, the Court finds that the magistrate judge's interpretation of § 303(i) is correct and it adopts the magistrate judge's analysis in its entirety. Adell's statutory interpretation to the contrary and the case law cited in opposition are not persuasive to the Court. Accordingly, the Court finds that § 303(i) should be interpreted to permit a bankruptcy court to consider attorney fees and costs incurred

200

following the dismissal of an involuntary petition.

In his motion for partial dismissal of the appeal, Adell argues that a recent decision in the Eleventh Circuit Court of Appeals regarding the Florida bankruptcy court proceedings has res judicata or collateral estoppel effect on a portion of the current claim for attorney fees. Adell argues that any claim for attorney fees for post-judgment conduct that occurred in the Florida court proceeding is an issue that could have been brought in the Florida case, was not addressed there, and thus, is precluded from consideration in the current case. In her second R & R, the magistrate judge concluded that Adell had waived his preclusion argument by failing to raise it in timely manner and by failing to address it adequately in the motion, and that in the alternative, preclusion does not apply.

 The Court has conducted a de novo review of Adell's motion for partial dismissal. Without ruling on whether Adell's motion was untimely or inadequate, the Court finds that the principles of res judicata and collateral estoppel do not apply in the current situation before the Court. Res judicata is inapplicable because the question whether § 303(i) permits the award of attorney fees following the dismissal and judgment of an involuntary petition is not an issue which was litigated or could have been litigated in the Florida bankruptcy proceeding. *See Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577–78 (6th Cir.2008).[1] Collateral estoppel is inapplicable because the pre-

cise issue regarding the proper interpretation of § 303(i) was not raised and actually litigated in the Florida bankruptcy proceeding. *Kosinski v. Comm'r of Internal Revenue*, 541 F.3d 671, 675 (6th Cir.2008). Accordingly, the Court overrules Adell's objections to the magistrate judge's second R & R and denies the motion for partial dismissal.

## CONCLUSION

In conclusion, the Court finds that the bankruptcy court erred when ruling that it did not have the authority to consider post-judgment attorney fees and costs. The Court will thus reverse the decision of the bankruptcy court and remand it for a decision on the merits of HMSC's application and for a determination of the reasonable amount, if any, of attorney fees and costs. The Court notes that § 303(i) states that "the court *may* grant judgment ... for ... a reasonable attorney's fee," but that a bankruptcy court is not required to do so. 11 U.S.C. § 303(i) (emphasis added). The bankruptcy court, in its sound discretion, may determine whether attorney fees are warranted. Of course, the bankruptcy court should consider all circumstances in making an equitable determination whether attorney fees should be granted, including what transpired between the parties in the Florida court proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED** that the appellee's objections [docket entry # 39] to the second R & R are **OVERRULED,** that the second R &

<hr/>

1. The Court believes that had the Florida bankruptcy court considered a request for attorney fees in its case pursuant to some other statutory authority, that decision would not have had a directly preclusive effect on the Michigan bankruptcy court as to the amount of post-judgment attorney fees warranted here, but it would certainly have been a factor for the Michigan bankruptcy court to consider when assessing all the circumstances and determining an equitable amount. The Court believes that failure to consider attorney fees recovered elsewhere and from other sources when evaluating the reasonable amount of attorney fees warranted would amount to an abuse of discretion. As it was, the issue of attorney fees was not raised in the Florida bankruptcy proceeding.

R [docket entry # 38] is **ADOPTED and ACCEPTED** as the opinion of this Court in a manner not inconsistent with this Order, and that the appellee's motion for partial dismissal [docket entry # 28] is **DENIED.**

**IT IS FURTHER ORDERED** that the appellee's objections [docket entry # 31] to the first R & R are **OVERRULED** and that the first R & R [docket entry # 29] is **ADOPTED and ACCEPTED** as the opinion of this Court in a manner not inconsistent with this Order.

**IT IS FURTHER ORDERED** that the decision of the bankruptcy court is **REVERSED** and that this case is **REMANDED** to the bankruptcy court for a decision on the merit's of HMSC's "Second Application for Compensation of Attorney Fees and Expenses."

**SO ORDERED.**

## REPORT AND RECOMMENDATION

VIRGINA M. MORGAN, United States Magistrate Judge.

### I. Introduction

This matter comes before the court on an appeal by appellants Honigman, Miller Schwartz and Cohn ("HMSC") and John Richards Homes Building Co., L.L.C. ("JRH") from a September 21, 2006 order of the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") denying HMSC's request for attorney's fees and costs incurred as a result of appellee Kevin Adell's post-award conduct. For the reasons stated below, this court recommends that the decision of the Bankruptcy Court be **REVERSED** and that this case be remanded to the Bankruptcy Court for a decision on the merits of the request.

### II. Background

While this appeal only presents a question regarding statutory interpretation, a recitation of the background of this matter may be helpful to the court.

### A. Underlying Case

As described by the Sixth Circuit, the underlying case in this matter involved a dispute between JRH and Kevin Adell:

As the bankruptcy court found, in December 2001, Adell and JRH entered into a Residential Building and Purchase Agreement whereby JRH, in exchange for $3,030,000, agreed to sell Adell a 1.8 acre parcel of property in Bloomfield Hills, Michigan, and to construct a home for Adell on the property, with construction to begin "within a reasonable time after the completion of building plans and issuance of permits." On February 28, 2002, the deal closed. The closing documents allocated $1,750,000 out of the $3,030,000 for the land purchase. Over the next few months, Adell's relationship with JRH and its principal, John Shekerjian, soured. Adell began to complain about the pace of construction on his home and to contact JRH's former employees seeking negative information about JRH. He told Shekerjian that he wanted another builder to build his house and, apparently, barred JRH from the property. He also became upset about the amount he had paid for the land, contending that it was only worth $1 million instead of $1.75 million.

On June 6, 2002, after a number of conversations, meetings, letters and other interactions between Adell or his representatives and JRH or its representatives, Adell filed a civil suit against JRH and Shekerjian in the Oakland County Circuit Court. The complaint included a number of claims, all of which essentially

rested on two allegations: (1) that Shekerjian and JRH had orally told Adell that the land was worth $1,000,000, and that the home they would construct for him would have a value of $2,000,000, despite the fact that the executed sale documents allocated $1,750,000 to the value of the land, leaving at most $1,280,000 for the home construction; and (2) that Shekerjian for JRH had told Adell that construction would begin immediately after the sale closed, even though they knew that was impossible because there were "water problems" with the property, and that the resulting delay in commencing construction was not "reasonable." On June 18, 2002, JRH and Shekerjian jointly filed an answer, denying the substance of all of Adell's claims, stating affirmative defenses, and including a verified counter-complaint.

During the time between when Adell filed his state court civil suit and JRH and Shekerjian filed their responsive pleadings, Adell contacted at least two of JRH's contractors, telling them that JRH was in financial trouble and trying to persuade them to join him in filing an involuntary bankruptcy petition against JRH. Both refused.

On June 24, 2002, less than a week after JRH and Shekerjian filed their responses in the state court case and without any further discussion or communication, Adell, as the sole petitioning creditor, filed an involuntary bankruptcy petition against JRH pursuant to 11 U.S.C. § 303(b)(2). According to the petition, Adell's own claim against JRH for fraud and breach of contract was in the amount of $800,000. Adell sought to maximize the publicity attending his filing by hiring a public relations firm, Marx Layne, to publicize alleged defects in JRH's performance of its construction and financial obligations.

On July 1, 2002, JRH filed a motion to dismiss the petition. Noting that Adell's claim against JRH cited in the petition was also the basis for Adell's state court civil complaint against JRH and Shekerjian, and that JRH and Shekerjian had recently filed pleadings denying all of Adell's claims, JRH argued that Adell's claim was the subject of a "bona fide dispute," precluding its use as the basis for the petition. JRH also argued that Adell was required to have at least three petitioning creditors because JRH was an entity with 12 or more creditors. Should the petition be dismissed, JRH asked the bankruptcy court to award it fees, costs and damages pursuant to 11 U.S.C. § 303(I). On July 12, 2002, Adell's bankruptcy attorneys filed a notice that three additional creditors had joined in the filing of the petition.

On July 15, 2002, the bankruptcy court held a hearing on JRH's motion to dismiss. Ruling from the bench, the court granted the motion, concluding that Adell was not qualified to serve as a creditor in an involuntary bankruptcy because his claim against JRH was not undisputed. The court explained:

The record that is before the Court overwhelmingly establishes that there is a bona fide dispute concerning this petitioning creditor's claim against the Alleged Debtor ... [and]

... that there are significant genuine issues of material fact concerning any disposition of the issues raised in the [state court case], ... such fundamental issues as which of the parties breached the contract, which of the parties was the first to breach the contract. There are clear issues of fact concerning particularly the fraud claim and the statutory claim.

Having rejected the sole petitioning creditor, Adell, the bankruptcy court ruled that it could not permit the joinder of other putative creditors. Adell did not appeal the bankruptcy court's dismissal of the petition.

After a period of discovery, followed by a two-day evidentiary hearing, the bankruptcy court granted JRH's motion on April 25, 2003. In a thorough opinion, the court found that Adell filed the involuntary bankruptcy petition against JRH in bad faith and awarded JRH compensatory damages in the amount of $4,100,000, punitive damages in the amount of $2,000,000, and attorneys' fees and costs in the amount of $313,230.68. [*In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 252–254 (6th Cir.2006) (internal citations omitted).]

### B. Post–Judgment Events

On May 2, 2003, Adell appealed the Bankruptcy Court's decision. *See In re John Richards Homes Building Co., L.L.C.*, 312 B.R. 849, 854 (E.D.Mich.2004).

On May 6, 2003, while the appeal was pending, Adell entered into a purchase agreement for a $2.8 million home in Florida. *See In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 593 (Bankr. E.D.Mich.2003). On May 8, 2003, he closed on the purchase of the Florida home. *See In re John Richards Homes*, 298 B.R. at 593.

On May 12, 2003, JRH directed writs of garnishment towards Adell's employers, Adell Broadcasting and STN.com, and 24 other persons or entities. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 217 through D/E # 242) Adell Broadcasting and STN.com subsequently filed garnishee disclosures on May 23, 2006. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 300 and # 302)

On May 21, 2003, JRH filed a motion in the Bankruptcy Court for miscellaneous post-judgment relief, seeking the aid of the Bankruptcy Court to collect on its judgment. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 281) Specifically, JRH argued that because Adell had used the proceeds from his Michigan assets to purchase the Florida home immediately after the judgment was entered, Adell should be ordered to sell that home and remit the proceeds in partial satisfaction of the judgment. *See In re John Richards Homes*, 298 B.R. at 593.[1]

On September 17, 2003, the Bankruptcy Court granted JRH's motion in part after finding that Florida's homestead exemption, as construed by Florida Supreme Court, was preempted by federal law and did not provide any protection for a party who had filed an involuntary bankruptcy petition in bad faith and who was attempting to protect his assets from the substantial compensatory and punitive damages awards entered against him by the Bankruptcy Court. *In re John Richards Homes*, 298 B.R. at 605–606. The Bankruptcy Court further found that, in the alternative, even if the Florida homestead exemption was not preempted, Adell did not qualify for it because the Florida house was not his homestead. *In re John Richards Homes*, 298 B.R. at 607–608. The

---

1. While the Bankruptcy Court held a hearing on JRH's motion (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 317), it denied Adell's request for an Evidentiary Hearing on the issue of whether he was domiciled in Michigan or Florida. On July 30, 2003, Adell appealed the Bankruptcy Court's denial of Adell's request for an Evidentiary Hearing on the issue of whether Adell was domiciled in Michigan or Florida. (Case No. 03–40194, D/E # 1). On February 18, 2004, the District Court closed that appeal for administrative purposes because Adell had filed for bankruptcy. (Case No. 03–40194, D/E # 14)

Bankruptcy Court ordered that Adell sell the Florida property within sixty (60) days and turn the proceeds from that sale over to JRH. *In re John Richards Homes*, 298 B.R. at 606. The Bankruptcy Court also ordered that Adell turn over certain assets to the U.S. Marshals and that the Michigan Secretary of State record a lien in favor of JRH on any vehicles still titled in Adell's name. *In re John Richards Homes*, 298 B.R. at 609.[2]

On September 30, 2003, JRH filed motions for judgment against Adell Broadcasting Corp. and STN.com pursuant to M.C.L. § 600.4051 on the basis that the garnishee disclosures filed by those two companies were false. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 480 and # 483)

On November 14, 2003, Adell sought relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy Court"), immediately triggering the operation of the automatic stay imposed by Section 362 of the Bankruptcy Code and stopping any further collection attempts by JRH. *See In re Adell*, 321 B.R. 573, 577 (Bankr.M.D.Fla. 2005).

In response, JRH first moved to transfer Adell's Chapter 11 case from the Florida Bankruptcy Court to the Bankruptcy Court in Michigan. *See In re Adell*, 371 B.R. 541, 543 (Bankr.M.D.Fla.2007) That motion was denied. *In re Adell*, 371 B.R. at 543. Having failed to obtain a transfer to the Michigan Bankruptcy Court, JRH tried, unsuccessfully to transfer the case to a different judge in the Middle District of Florida. *In re Adell*, 371 B.R. at 543.

On February 10, 2004, JRH filed a motion to dismiss Adell's Chapter 11 filing on the basis that it was filed in bad faith. On May 28, 2004, the Florida Bankruptcy Court, after extensive hearings, entered an order and opinion denying JRH's motion to dismiss. *See In re Adell*, 310 B.R. 460, 461 (Bankr.M.D.Fla.2004).

On February 25, 2004, Adell filed a Chapter 11 plan of reorganization which proposed to pay the judgment in full over time once the judgment became final and no longer appealable. JRH objected to that plan. *In re Adell*, 371 B.R. at 543. Subsequently, Adell amended the proposed plan to accelerate payment of the judgment, pay interest on the judgment, and to secure the judgment to the extent of at least $3.0 million with a cash escrow. JRH continued to object. *In re Adell*, 371 B.R. at 543.

On August 5, 2004, the United States District Court for the Eastern District of Michigan affirmed the Bankruptcy Court's award of JRH's costs, attorneys' fees, compensatory damages and punitive damages pursuant to 11 U.S.C. § 303(I). *In re John Richards Homes Building Co., L.L.C.*, 312 B.R. 849, 867 (E.D.Mich.2004). Subsequently, on September 1, 2004, Adell appealed the District Court's affirmation of the Bankruptcy Court's award. (Case No. 03–40109, D/E # 20)

On October 15, 2004, the Florida Bankruptcy Court denied JRH's motion for relief from the automatic stay as to the garnishment actions against STN.com and Adell Broadcasting Corp. *In re Adell*, No. 03–23684, 2004 WL 2931390 (Bankr. M.D.Fla. October 15, 2004).

On October 27, 2004, the Florida Bankruptcy Court entered an Order denying

---

**2.** On September, 26, 2003, Adell appealed the Bankruptcy Court's ruling that the Florida home did not fall within the Florida homestead exemption. (E.D. Mich. Case No. 03–40245, D/E # 1) On February 18, 2004, the District Court closed that appeal for administrative purposes because Adell had filed for bankruptcy. (Case No. 03–40245, D/E # 12)

Adell's Fourth Amended Chapter 11 Plan and set a hearing for November 18, 2004, to consider a dismissal of the bankruptcy case. *In re Adell,* 371 B.R. at 544. That Order was challenged by Adell, who filed a Motion for Reconsideration on November 5, 2004. *In re Adell,* 371 B.R. at 544. On March 22, 2005, the Florida Bankruptcy Court granted Adell's request for reconsideration. *In re Adell,* 371 B.R. at 544.

In response to the Reconsideration Order, Adell proposed a plan to place $7,000,000 in escrow to be used to satisfy the judgment if it was affirmed on appeal. That plan was to be funded by Adell's employers and by a mortgage on Adell's homestead. *In re Adell,* 371 B.R. at 544.

On February 1, 2005, the Florida Bankruptcy Court granted Adell's request to avoid, on exemption impairment grounds, the lien on the Florida residence. *In re Adell,* 321 B.R. 573, 578 (Bankr.M.D.Fla. 2005). As found by the Florida Bankruptcy Court:

> The difference between the existing facts and the facts at the time the Michigan Bankruptcy Court rejected the claim should be quite evident. The Debtor's homestead exemption claim presented to this Court is in the context of an already pending bankruptcy case of the Debtor. Based on the evidence presented to this Court, this Court is satisfied that the Debtor complied with the residency requirements of Section 522(b)(2)(A), that he was a bone fide

resident of Florida at the time he filed his Petition for relief under Chapter 11 in this Court, therefore, he is entitled to the homestead protection guaranteed by Article X, Section 4 of the Florida Constitution. Thus, the Naples residence of the Debtor is exempt and JRH cannot compel the same to be sold to satisfy the Judgment of the Michigan Bankruptcy Court based on the sanction award granted to JRH. [*In re Adell,* 321 B.R. at 578.]

On May 11, 2005, the Florida District Court, considering JRH's appeal of the Florida Bankruptcy Court's denial of JRH's initial motion to dismiss the Chapter 11 case reversed the Florida Bankruptcy Court's ruling and held that the denial was in error and the Chapter 11 Case should be dismissed it was a bad faith filing. *In re Adell,* 371 B.R. at 544.

However, on May 12, 2005 and before an order dismissing the case could be entered, Adell filed a notice that he was voluntarily converting his bankruptcy to a case under Chapter 7. *In re Adell,* 371 B.R. at 544. On May 17, 2005, the Florida Bankruptcy Court entered an order converting Adell's Chapter 11 Case to a case under Chapter 7. *In re Adell,* 371 B.R. at 544.[3]

On July 13, 2005, the Florida Bankruptcy Court denied JRH's second motion requesting relief from the automatic stay in order to pursue garnishment proceedings after determining that a finding of bad faith in filing a Chapter 11 petition has no

---

**3.** On June 21, 2005, the Florida Bankruptcy Court sanctioned JRH's counsel for actions taken by JRH's counsel on May 11, 2005 in the Michigan Bankruptcy Court. *In re Adell,* 328 B.R. 845, 849 (Bankr.M.D.Fla.2005). On May 11, 2005, after the Florida District Court entered an order granting JRH's motion to dismiss, JRH's counsel sought immediate appointment of a receiver for Adell's property in the Michigan Bankruptcy Court. According to the Florida Bankruptcy Court, the mere

entry of an order granting the motion to dismiss did not dismiss the case and, therefore, Adell's case was still before the Florida Bankruptcy Court until the Florida District Court revoked the reference. Accordingly, in the Florida Bankruptcy Court's view the automatic stay never ceased to exist and it still protected Adell regardless of any findings of the Michigan Bankruptcy Court. *In re Adell,* 328 B.R. at 848.

relevance to Adell's right to maintain a Chapter 7 case and, thus, does not serve as a "cause" for granting relief from the stay. *See In re Adell,* 328 B.R. 850, 852–853 (Bankr.M.D.Fla.2005).

On July 22, 2005, JRH filed a second motion to dismiss (Doc. No. 677) and, on October 4, 2005, the Florida Bankruptcy Court entered an order granting JRH's motion to dismiss Adell's Chapter 7 Case after finding that cause existed for dismissal because Adell's filing was not supported by the well-established policy aims of Chapter 7. *See In re Adell,* 332 B.R. 844, 848–849 (Bankr.M.D.Fla.2005).

On February 14, 2006, the Florida Bankruptcy Court entered an order reaffirming the order on the motion to dismiss and denying Adell's Emergency Motion for Reconsideration and Motion for Stay Pending Reconsideration or Appeal. *See In re Adell,* 343 B.R. 717, 722 (Bankr.M.D.Fla. 2006) ("this Court is satisfied that there is nothing stated in [Adell's] Emergency Motion for Reconsideration which would warrant this court to set aside its Order on Motion to Dismiss.").

On March 1, 2006, the Sixth Circuit affirmed both the Bankruptcy Court's award and the District Court's approval of that reward. *See In re John Richards Homes Bldg. Co., L.L.C.,* 439 F.3d 248, 252 (6th Cir.2006)

On April 3, 2006, Adell paid the judgment in full with interest. Included in the payment were the punitive damages, costs and attorneys' fees that the Bankruptcy Court awarded JRH in defending the involuntary case and obtaining the Judg-

ment. *See In re Adell,* 371 B.R. 541, 544 (Bankr.M.D.Fla.2007).[4]

Prior to payment of the judgment, on February 16, 2006, JRH had filed a "Motion to Enforce Judgment" in which it reasserted early motions for judgment against Adell Broadcasting Corp. and STN.com (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 773). On August 8, 2006, the Bankruptcy Court denied JRH's motions for judgement against Adell Broadcasting Corp. and STN.com. *See In re John Richards Homes Company, L.L.C.,* 346 B.R. 762 (Bankr.E.D.Mich. 2006). According to the Bankruptcy Court, the Michigan Court Rules undermined JRH's argument that M.C.L. § 600.4051 imposed full liability for the judgment on the garnishee defendant that is separate from the defendant's liability and it is a better reading of the statute that a garnishee defendant that files a false disclosure is liable only for the remaining balance due on the underlying judgment. *In re John Richards Homes,* 346 B.R. at 766. In this case, because Adell had paid the judgment and there was no balance, the Bankruptcy Court found that Adell Broadcasting and STN.com had no further liability to JRH. *In re John Richards Homes,* 346 B.R. at 766.

Following payment of the judgment, JRH filed a motion for sanctions in the Florida Bankruptcy Court. On April 7, 2006, the Florida Bankruptcy Court entered an order denying JRH's motion to impose sanctions on the basis that Adell's petition had been dismissed and, therefore, it did not retain jurisdiction in order to issue any further orders relating to the above-captioned case. *See In re Adell,* No.

---

**4.** While Adell paid the judgment on April 3, 2006, he still filed a Petition for a Writ of Certiorari on May 30, 2006. Petition for Writ of Certiorari, *Adell v. John Richards Homes Bldg. Co.,* No. 05–1532, 2006 WL 1519179, (May 30, 2006). On October 2, 2006, the

United States Supreme Court denied Adell's petition for writ of certiorari. *Adell v. John Richards Homes Bldg. Co., L.L.C.,* 549 U.S. 818, 127 S.Ct. 85, 166 L.Ed.2d 31 (Mem) (2006).

2:06–cv–276–FtM–29SPC, 2006 WL 3827438, *1 (M.D.Fla. December 27, 2006). On April 21, 2006, the Florida Bankruptcy Court denied reconsideration of that motion as without merit, and on April 30, 2006, JRH filed a notice of appeal. *In re Adell*, 2006 WL 3827438 at *1. On December 27, 2006, the United States District Court for the Middle District of Florida issued an opinion and order granting JRH's motion to remand. *In re Adell*, 2006 WL 3827438 at *1. According to the Florida District Court, the case was remanded to the Florida Bankruptcy Court to revisit JRH's motion for sanctions on the merits, or to indicate that its prior order was based on the merits as well as lack of jurisdiction. *In re Adell*, 2006 WL 3827438 at *1. On March 28, 2007, the Florida Bankruptcy Court denied JRH's motion for sanctions after determining that Adell had attempted to pursue a legitimate goal within the utmost of his ability when filing for bankruptcy and that, therefore, imposing a sanction would be a double punishment in addition to the $2 million judgment imposed by the Michigan Bankruptcy Court. *See In re Adell*, 371 B.R. 541, 545–546 (Bankr.M.D.Fla.2007). On March 18, 2008, the Florida District Court affirmed the Florida Bankruptcy Court's decision to deny sanctions. *In re Adell*, No. 2:07–cv–361–FTM–29SPC, 2008 WL 746833 (M.D.Fla. March 18, 2008). On October 17, 2007, the Eleventh Circuit issued an opinion affirming the Florida District Court's opinion. *See In re Adell*, 296 Fed.Appx. 837 (11th Cir.2008).

On April 13, 2006, JRH filed a "Motion for Assessment of Additional Punitive Damages" in the Bankruptcy Court. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 834) Adell filed an objection to the motion (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 879) and the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006. On September 21, 2006, the Bankruptcy Court denied JRH's motion for assessment of additional punitive damages. *In re John Richards Homes Co., L.L.C.*, No. 02–54689–R, 2006 WL 3230009 (E.D.Mich. September 21, 2006). In denying that motion, the Bankruptcy Court stated:

> The Court declines to sanction Adell, either pursuant to any inherent power it may have or pursuant to § 105. Contrary to JRH's assertion, the Court did not order Adell to pay JRH $6.413 million. The Court entered a judgment for that amount. A money judgment is not a court order. To the extent that Adell's conduct in the various courts warrants sanctions, JRH is free to seek redress in those courts. [*In re John Richards Bldg.*, 2006 WL 3230009 at *2.]

### C. Matter Before the Court

On April 21, 2006, HMSC, the law firm representing JRH in this matter, filed a "Second Application for Compensation of Attorney Fees and Expenses" in the Bankruptcy Court. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 834). In that application, HMSC sought, pursuant to 11 U.S.C. § 303(i), $1,712,974.04 as compensation for fees and expenses incurred in enforcing the judgment and defending the appeals. Adell filed an objection to that application (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 880) and the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006. On September 21, 2006, the Bankruptcy Court denied HSMC's second application. *See In re John Richards Homes Bldg. Co. L.L.C.*, No. 02–54689–R, 2006 WL 3228523 (Bankr. E.D.Mich. September 21, 2006). In denying that application, the Bankruptcy Court noted that (1) HMSC not only sought attorney's fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment, and that (2) few

cases have addressed the precise issue of whether § 303(i)(1) authorizes the bankruptcy court to award fees and costs beyond those directly incurred in defending the involuntary petition. In conclusion the Bankruptcy Court stated:

> [HMSC] not only seeks attorney fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment. HMS & C has offered no legal support for this request. In light of the caselaw to the contrary, the Court must deny its application for a second award of attorney fees and costs. [*In re John Richards Homes*, 2006 WL 3228523 at \*2.]

On October 3, 2006, JRH and HMSC filed a notice of appeal with respect to the Bankruptcy Court's denial of HSMC's second application for compensation of attorney fees and expenses (D/E # 1). In their appellate brief (D/E # 3), JRH and HMSC argue that the Bankruptcy Court erred when it found that it could not award the attorney's fees and costs JRH incurred while trying to collect the judgment. According to appellants, the Bankruptcy Court's decision ignored the statutory text, relied upon wrongly-decided cases, and frustrated legislative intent.

In his appellate brief (D/E # 10), Adell argues that the Bankruptcy Court lacked jurisdiction over HMSC's application because the bankruptcy case has been closed, HMSC was only a creditor of JRH, and because JRH has not sought relief from the judgment, which has been paid. Adell also argues that § 303(i)(1) does not apply to post-judgment fees and that the Bankruptcy Court's interpretation is consistent with both the comprehensive scheme governing recovery of fees and costs as well as the case law regarding the recovery of appellate fees and sanctions.

In their reply brief (D/E # 13), JRH and HMSC assert that Adell's arguments regarding jurisdiction are meritless and should be rejected. Appellants also reiterate that the Bankruptcy Court could award attorney's fees and costs without regard to cause and without regard to whether the fees and costs were expended before or after dismissal of the involuntary petition.

### III. Standard of Review

District courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges. *See* 28 U.S.C. § 158(a)(1). The District Court reviews a bankruptcy court's conclusions of law de novo. *See In re Holland*, 151 F.3d 547, 548 (6th Cir.1998).

### IV. Discussion

#### A. Jurisdiction

 As a preliminary matter, Adell argues that the Bankruptcy Court did not have jurisdiction to rule on HMSC's application because the bankruptcy case has been dismissed. While Adell raised this argument below, the Bankruptcy Court did not address it. Nevertheless, while the Bankruptcy Court did not deny HMSC's application because of a lack of jurisdiction, the District Court may consider whether the Bankruptcy Court was without jurisdiction to consider the motion in the first instance as an alternative ground for affirming the decision below. *See; Dimmitt & Owens Fin., Inc. v. Herdean (In re Herdean)*, 92 Fed.Appx. 107, 110 (6th Cir.2003) (affirming bankruptcy court decision on alternative basis, despite error in reason given for decision below). Moreover, "federal courts, being of limited jurisdiction, must examine their subject-matter jurisdiction 'throughout the pendency of *every* matter before them.'" *See Holloway v. Brush*, 220 F.3d 767, 781 (6th Cir. 2000) quoting *Children's Healthcare is a*

*Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1419 n. 2 (6th Cir.1996) (emphasis in original). As the Sixth Circuit has observed, a court has a duty to inquire into the basis for subject matter jurisdiction and to dismiss the case if jurisdiction is lacking. *See Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 890 (6th Cir.1998). The United States Supreme Court has expressly instructed that "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Therefore, in light of that case law and Adell's arguments, it is appropriate for the court to consider the issue of subject matter jurisdiction as it relates to the matter at hand.

Reviewing the scope of bankruptcy court jurisdiction begins with the Congressional grant of jurisdiction in 28 U.S.C. §§ 1334 and 157. Section 1334 confers jurisdiction on the district court to hear "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). § 157 provides for the referral of those matters to the bankruptcy courts and sets up the framework of core and non-core, related proceedings.

Core proceedings consist of "any or all proceedings arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b). Interpreting § 157(b)(2), the Sixth Circuit has held that "[a] core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." *In re Lowenbraun,* 453 F.3d 314, 320 (6th Cir.2006) quoting *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 482 (6th Cir.1992) (holding that an action was a core proceeding where "a successful action on the [ ] plain-

tiffs' part could have affected the outcome of the bankruptcy proceeding"); *see also In re DeLorean Motor Co.,* 155 B.R. 521, 525 (9th Cir. BAP 1993) (holding that even if a claim fits within the literal language of § 157(b)(2), it will not be considered a core proceeding "if it is a state law claim that could exist outside of bankruptcy and is not inextricably bound to . . . a right created by the Bankruptcy Code.") A nonexhaustive list of core proceedings is found in 28 U.S.C. § 157(b)(2).

█ Non-core, related proceedings are civil proceedings which do not invoke a substantive right created by bankruptcy but nonetheless fall within the jurisdiction of the bankruptcy court because they share a nexus with the bankruptcy case and will have some "conceivable effect" on the administration of the debtor's estate. *See In re Williams,* 256 B.R. 885, 893 (8th Cir. BAP 2001).

This appeal calls into question the jurisdiction, if any, of the bankruptcy court to conduct proceedings subsequent to the dismissal of the underlying bankruptcy case. In *In re Lowenbraun,* 453 F.3d 314, 321 (6th Cir.2006), the Sixth Circuit cited with approval the case *In re Douglas L. Heinsohn,* 247 B.R. 237, 242–44 (E.D.Tenn. 2000), in which the District Court stated that "[t]here is no bright-line rule dictating that once an estate has been fully administered a trustee cannot avail himself of the federal court's bankruptcy jurisdiction" (citation and quotation marks omitted). Moreover, 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b) specifically provide that bankruptcy court jurisdiction is not limited to matters concerning the administration of the estate and other courts have found that a bankruptcy court may have the discretion to determine whether it is proper to exercise jurisdiction after the underlying case has been dismissed or closed. *See Carraher v. Morgan Electronics, Inc.*

*(In re Carraher)*, 971 F.2d 327 (9th Cir. 1992) (holding that bankruptcy court has discretion to retain jurisdiction over related case after dismissal of the underlying bankruptcy case); *In re Morris*, 950 F.2d 1531, 1534 (11th Cir.1992). *See also In re Javens*, 107 F.3d 359, 364 n. 2 (6th Cir. 1997) (finding that dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction to dispose of related matters after the underlying bankruptcy case has been dismissed, although the exercise of such jurisdiction is left to the sound discretion of the court).

▇ As a general rule, the dismissal of a bankruptcy case results in the dismissal of non-core, related proceedings, because the bankruptcy court's jurisdiction over the related proceeding depends on its nexus with the underlying bankruptcy case. *In re Williams*, 256 B.R. at 893; *Tim Wargo & Sons, Inc. v. Mankin Farms, Inc. (In re Tim Wargo & Sons, Inc.)*, 107 B.R. 626 (Bankr.E.D.Ark.1989) (citing *In re Smith*, 866 F.2d 576, 580 (3rd Cir.1989)).

On the other hand, there is much support for the proposition that bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case. *See In re Williams*, 256 B.R. at 893; *Post v. Ewing (In re Post)*, 119 B.R. 566, 567 (S.D.Ohio 1989); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 911 (9th Cir. BAP 1995); *In re Hardy*, 209 B.R. 371, 373 (Bankr. E.D.Va.1997). As noted by the Eighth Circuit, core proceedings that "arise after the case is dismissed or closed, however, do not fit neatly into the categories listed in 28 U.S.C. § 157(b)(2), inasmuch as most or all of those categories are premised on the existence of an underlying bankruptcy estate." *In re Williams*, 256 B.R. at 893. Examples of core proceedings that arise after a bankruptcy case is dismissed or closed include awards of costs, attorney's fees, damages, punitive damages and sanctions. *See In re Cooper School of Art, Inc.*, 709 F.2d 1104, 1106 (6th Cir.1983) (holding that when "a bankruptcy court dismisses a petition for involuntary proceedings under Chapter XI for failure to join three or more creditors it does not lose jurisdiction for the purpose of awarding costs and attorney fees") *In re R. Eric Peterson Constr. Co., Inc.*, 951 F.2d 1175, 1179 (10th Cir.1991) (finding that dismissal of the bankruptcy petition is one prerequisite that must be met before the bankruptcy court can make a § 303(i) award); *Price v. Rochford*, 947 F.2d 829, 830–31 (7th Cir.1991) (holding that an action under § 362(h) for damages for willful violation of an automatic stay survives dismissal of the case in bankruptcy); *In re Singer Furniture Acquisition Corp.*, 261 B.R. 745, 750–751 (Bankr.M.D.Fla.2001) (awarding sanctions pursuant to the inherent power of the court and 11 U.S.C. § 105 for the filing of a Chapter 11 Petition in bad faith); *In re Glannon*, 245 B.R. 882, 887 (D.Kan. 2000) (holding that § 303(i) proceedings are core proceedings that the bankruptcy court retained jurisdiction over following the dismissal of the bankruptcy petition); *In re Atlas Mach. and Iron Works, Inc.*, 190 B.R. 796, 798 (Bankr.E.D.Va.1995) ("holding that a bankruptcy court retains jurisdiction following dismissal of the involuntary bankruptcy proceeding for the purposes of awarding costs, attorneys' fees and damages because those proceedings constitute core proceedings under 28 U.S.C. § § 157(b)(2)(A), (C) and (O).")

▇ In this case, HMSC's second application for attorney's fees and costs was a core proceeding over which the Bankruptcy Court retained jurisdiction after the dismissal of the involuntary petition and the payment of the judgment. In making the determination of whether a proceeding is a core proceeding, the court looks at the

form and the substance of the proceeding. *Sanders Confectionery Prods., Inc., v. Heller Fin., Inc.,* 973 F.2d 474, 483 (6th Cir. 1992) citing *In re Wolverine Radio Co.,* 930 F.2d 1132, 1144 (6th Cir.1991). Here, HMSC's second application arises from the judgment issued by the Bankruptcy Court, which was clearly a core proceeding, and it is inextricably intertwined with the bankruptcy case itself. As discussed above, several courts have expressly found that motions for awards of attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) constitute core proceedings that a bankruptcy court has jurisdiction of after the dismissal of the involuntary petition. *In re Cooper School of Art,* 709 F.2d at 1106; *In re R. Eric Peterson Constr.,* 951 F.2d at 1179; *In re Glannon,* 245 B.R. at 887; *In re Atlas Mach.,* 190 B.R. at 798. As discussed below, Adell cites to a number of cases supporting his interpretation of § 303(i)(1), but he does not provide any cases dismissing applications for attorney's fees and costs because of a lack of jurisdiction. HMSC and JRH seek attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) and, for the reasons stated above, this court finds that the application constituted a core proceeding over which the Bankruptcy Court had jurisdiction.[5]

Regarding another alleged jurisdictional defect, Adell argues that the application for attorney's fees and costs is barred because the judgment has been paid and JRH failed to seek relief from the judgment. According to Adell, HMSC and JRH's request for attorney's fees and costs merged with the judgment and, therefore, it must seek relief from the judgment before requesting additional damages. However, as noted by appellants in their reply brief, they seek attorney's fees and costs in connection to proceedings that occurred subsequent to the initial award and, therefore, its motion is not barred by the merger doctrine.

### B. 11 U.S.C. § 303

As discussed above, HMSC applied for attorney's fees and costs pursuant to 11 U.S.C. § 303(i). That statute provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-
>
> (1) against the petitioners and in favor of the debtor for-
>
> (A) costs;
>
> (B) a reasonable attorney's fee; or
>
> (C) "any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title;"
>
> (2) against any petitioner that filed the petition in bad faith, for-
>
> (A) any damages proximately caused by such filing; or
>
> (B) punitive damages.

 The first step in interpreting any statute is to determine whether the language at issue has a plain and unambiguous meaning. *U.S. v. Mabry,* 518 F.3d 442, 450 (6th Cir.2008) (citations omitted). The Supreme Court has repeatedly held that the Bankruptcy Code should be interpreted in accordance with its plain lan-

---

**5.** Adell also argues that the Bankruptcy Court lacked jurisdiction because HMSC was only a creditor of JRH. However, Appellants note that the Bankruptcy Court invited an application by HMSC on JRH's behalf and that the Bankruptcy Court did not dismiss the applica-

tion because it was brought by HMSC. The identity of the applicant in this case would not affect the determination that the matter was a core proceeding over which the Bankruptcy Court retained jurisdiction.

guage. *See*, e.g., *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In *Ron Pair*, the Court stated: "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" 489 U.S. at 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (interpreting the meaning of § 506 of the Bankruptcy Code) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Moreover, the Supreme Court has found that the Code is the result of congressional compromises concerning the competing interests in bankruptcy cases, *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 61 n. 12, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and that, considering those compromises, it even more important to rely on the Code's plain language, rather than on outside evidence of congressional intent. *See Ron Pair*, 489 U.S. at 240, 109 S.Ct. 1026, 103 L.Ed.2d 290; *Board of Governors v. Dimension Fin. Corp.*, 474 U.S. 361, 373–74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action.") Thus, if the statutory language is unambiguous and the statutory scheme coherent and consistent, then a court's inquiry must cease and it must apply the plain language of the statute. *Mabry*, 518 F.3d at 450 (citations omitted).

■ In this court's view, the language of § 303(i)(1) is ambiguous as to whether a bankruptcy court can only award attorney's fees and costs incurred in defending against the filing of an involuntary petition or whether it may also award attorney's fees and costs in connection to proceedings that arose out of the filing of the involuntary petition subsequent to the dismissal of that petition. Section 303(i)(1) permits a bankruptcy court to grant judgment against the petitioner for costs and reasonable attorney's fees if the involuntary petition is dismissed and no statutory language in § 303(i)(1) clearly limits awards of attorney's fees and costs to those incurred in defending against the filing of an involuntary petition. On the other hand, no language in that statute expressly authorizes awards for any and all proceedings arising from the involuntary petition, even those arising after the petition is dismissed. To the extent the statutory language supports either parties' interpretation, it supports the appellants' view because there is no limitation on fees and costs in the language of the statute itself. Nevertheless, given the lack of clarity in the statutory language, § 303(i)(1) is ambiguous with respect to the issue on appeal.

The ambiguity in the language of § 303(i) is reflected in the cases interpreting that statute as both appellants and Adell point to case law supporting their respective interpretation of the statute. The first case that appears to address this issue is *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 703 (Bankr.D.Colo.1984). In that case, a bankruptcy court in the United States District Court of Colorado found that nothing in the Bankruptcy Code or case authority limited an award to the date of dismissal. *In re Advance Press*, 46 B.R. at 703. The court also found that preparation for and attendance at the hearing on attorney's fees, costs and damages were part of the matters resulting from the involuntary petition and, as such, they were compensable under § 303(I). *In re Advance Press*, 46 B.R. at 703.

A few years later, a bankruptcy court in the United States District Court for the

Northern District of Texas relied on the reasoning of *In re Advance Press* in finding that it could award attorney's fees and costs relating to the proceedings on damages that occurred after the dismissal of the involuntary petition. *In re Petrosciences Intern., Inc.*, 96 B.R. 661, 665 (Bankr.N.D.Tex.1988). The court in *In re Petrosciences* went on to hold that, in the event the petitioner appealed the award of fees and costs to the United States District Court, the alleged debtor would suffer additional damages as attorney's fees for which the court would award $10,000.00, and that, if this case was appealed to the Fifth Circuit Court of Appeals, the court would award an additional $10,000.00 for attorney's fees. *In re Petrosciences*, 96 B.R. at 665.

In 1995, a bankruptcy court in the United States District Court for the Eastern District of Virginia found that, "[u]nder the circumstances of this case, compensable fees include time expended by [the alleged debtor] not only in defending the initial filing of the involuntary petition, but also time expended in defending [the petitioner's] appeals of the dismissal of the petition and preparing its request for fees, costs and damages." *In re Atlas Mach. and Iron Works, Inc.*, 190 B.R. 796, 803–804 (Bankr.E.D.Va.1995), citing *In re Advance Press*, 46 B.R. at 703. In that court's view, any award of attorneys' fees and costs under § 303(i)(1) should be for necessary work performed in defending against the involuntary petition and must be reasonable under all the circumstances. *In re Atlas Mach.*, 190 B.R. at 803.

In 1996, a bankruptcy court in the United States District Court for the District of

New Jersey found that any award of attorney's fees and costs in the discretion of the court and pursuant to § 303(i)(1) may include both the cost of litigating the bad faith and damages aspect of the proceeding under § 303(i)(2) as well as the dismissal aspect of the proceeding under § 303(i)(1). *In re Landmark Distributors, Inc.*, 195 B.R. 837, 846 (Bankr.D.N.J.1996) citing *In re Advance Press*, 46 B.R. at 703. That court also noted that not allowing the attorney's fees and costs incurred in post-dismissal proceedings would deny approximately 87% of the fees requested in that case and, therefore, would fly in the face of legislative intent and common sense. *In re Landmark*, 195 B.R. at 846.

The first case relied upon by Adell was issued by a bankruptcy court in the United States District Court for the District of Connecticut in 1999. *In re Allen–Main Associates, Ltd. Partnership*, 229 B.R. 577, 578 (Bankr.D.Conn.1999). In that case, the court held that a bankruptcy court does not have statutory authority to award attorney's fees and costs incurred in an appeal from the bankruptcy court because no such authority could reasonably be extracted from the provisions of § 303(i) and because the party seeking costs and fees in that case did not cite any persuasive authority. *In re Allen–Main*, 229 B.R. at 578. The court in *In re Allen–Main* went on to note that there were relevant rulings in both the Ninth Circuit and the Second Circuit holding that Bankruptcy Code § 523(d)[6] which grants bankruptcy courts authority to award prevailing parties attorney's fees and costs, did not authorize the bankruptcy court to award such fees and

---

**6.** 11 U.S.C. 523(d) provides: "If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attor-

ney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust."

costs incurred on an appeal and that appellate courts are in a better position to award costs and fees with respect to appeals. *In re Allen–Main*, 229 B.R. at 578–579 citing *Vasseli v. Wells Fargo Bank (In re Vasseli)*, 5 F.3d 351, 353 (9th Cir.1993) and *AT&T Universal Card Services Corp. v. Williams (In re Williams)*, 224 B.R. 523, 532 (2d Cir. BAP 1998). The court then stated that it could "conceive of no reasonable basis to distinguish the rulings under § 523(d) from a ruling under § 303(i)". *In re Allen–Main*, 229 B.R. at 579. The court also found that *In re Atlas Machine* and *In re Petrosciences*, where appeal-related costs and attorney's fees were considered by the bankruptcy court under § 303(i), lacked precedential value because there was no issue raised as to the bankruptcy court's authority in those proceedings. *In re Allen–Main*, 229 B.R. at 579.

In 2000, a bankruptcy court in the United States District Court for the District of Kansas found that § 303(i) did not limit recoverable attorney's fees and costs to those incurred during the dismissal phase of a suit. *In re Glannon*, 245 B.R. 882, 894 (D.Kan.2000). In that case, the court first determined that, because the general rule is that a prevailing party may recover costs for the entire bankruptcy proceeding, it would be illogical to construe § 303(i)(1) as either merely partially redundant or as somehow limiting an award of costs to only those costs incurred in the dismissal phase of the proceeding. *In re Glannon*, 245 B.R. at 894. The court also found that the drafters of the statute surely meant that costs were recoverable under § 303(i) without drawing a distinction between the defensive phase, in securing dismissal, or in the offensive phase, in being made whole where there was bad faith. *In re Glannon*, 245 B.R. at 894. In making that finding, the court noted that the large majority of cases that had addressed the issue supported its interpretation of § 303(i). *In re Glannon*, 245 B.R. at 894 citing *In re Advance Press*, 46 B.R. at 703; *In re Petrosciences*, 96 B.R. at 665; *In re Atlas Mach.*, 190 B.R. at 807 among others. The court in *Glannon* also cited with approval the finding in *In re Landmark*, 195 B.R. at 846, found that because the great proportion of attorney's fees were incurred during the damages phase of the litigation, denying those fees would "fly in the face of legislative intent and common sense." *In re Glannon*, 245 B.R. at 895 quoting *In re Landmark*, 195 B.R. at 846.

In 2003, a bankruptcy court in the United States District Court for the Middle District of Pennsylvania found that § 303(i) did not authorize appellate-related costs and attorneys' fees. *In re Law Center*, 304 B.R. 136, 138 (Bankr.M.D.Pa. 2003). According to that court, while there are cases permitting reimbursement for time expended in defending appeals of the dismissal of the original petition, those cases have found little support in subsequent case law and there were no issues raised as to the bankruptcy court's authority in those proceedings to award appeal-related costs and attorneys' fees under Section 303(i). *In re Law Center*, 304 B.R. at 138 citing *In re Allen–Main*, 229 B.R. at 578–579. The court in *In re Law Center* also noted that, "if a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee." *In re Law Center*, 304 B.R. at 138.

Finally, in 2004, the Ninth Circuit held that § 303(i)(1), which expressly grants discretionary authority to award fees at the trial level, should not be construed to

grant similar authority to award fees at the appellate level and that. therefore, the bankruptcy court in that case had abused its discretion by awarding a party previously incurred appellate fees pursuant to § 303(i)(1). *Higgins v. Vortex Fishing Systems, Inc.*, 379 F.3d 701, 708–709 (9th Cir.2004). According to the Ninth Circuit, while the "plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1):(1) the court must have dismissed the petition on some ground other than consent by the parties; and (2) the debtor must not have waived its right to recovery under the statute" *Higgins*, 379 F.3d at 705–706, the award of fees and costs attributable to the appeals process pursuant to § 303(i)(1) is contrary to law given the holding of *State of Cal. Emp. Dev. v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147 (9th Cir.1996). *Higgins*, 379 F.3d at 709. The court in *In re Del Mission*, relying on the holding in *Vasseli v. Wells Fargo Bank (In re Vasseli)*, 5 F.3d 351, 353–54 (9th Cir.1993), had concluded that "the only authority for awarding discretionary appellate fees in bankruptcy appeals is Rule 38" [7] *In re Del Mission*, 98 F.3d at 1154, and, as described by the Ninth Circuit in *Higgins*, the controlling principle arising from *In re Del Mission* was that "we should not [infer] from [a bankruptcy court's express discretionary authority to award fees at the trial level] a similar authority to award fees at the appellate level." *Higgins*, 379 F.3d at 709 quoting *In re Del Mission*, 98 F.3d at 1154. In making its ruling, the Ninth Circuit did note that "[t]his holding creates a discrepancy that only Congress can rectify. Despite Congress's clear intent to award attorney's fees and costs to an alleged debtor who successfully defends an involuntary bankruptcy bid, the debtor remains exposed to appellate attorney's fees unless it can be demonstrated that the appeal was frivolous under Rule 38." *Higgins*, 379 F.3d at 709 n. 3

In this court's view, 11 U.S.C. § 303(i)(1) authorizes a bankruptcy court to award attorney's fees and costs incurred from all proceedings arising out of the filing of an involuntary petition if that petition is dismissed. As discussed above, to the extent the statutory language supports either parties' interpretation, it supports the appellants' view because there is no limitation on fees and costs in the language of the statute itself. The appeals and other litigation described above all resulted from Adell's filing of the involuntary petition and, as such, they are compensable under § 303(i).

While the Sixth Circuit has not ruled on this issue, the majority of cases discussed above support this interpretation of § 303(i) and the court adopts this interpretation. As found by those cases, nothing in the Bankruptcy Code limits an award to the date of the dismissal of the involuntary petition and, if the petitioner appeals the dismissal or the involuntary petition causes other litigation, the alleged debtor continues to suffer damages for which there should be compensation. *In re Advance Press*, 46 B.R. at 703, *In re Petrosciences*, 96 B.R. at 665; *In re Atlas Mach.*, 190 B.R. at 803–804; *In re Glannon*, 245 B.R. at 894. Moreover, it is possible that the majority of attorney's fees were actually incurred after an involuntary petition is dismissed and denying those fees would "fly in the face of legislative intent and common sense." *In re Glannon*, 245 B.R. at 895; *In re Landmark*, 195 B.R. at 846. In this case, it appears that the majority of attorney's fees and costs were incurred

---

7. Fed. R.App. P. 38 states, "If a court of appeals determines that an appeal is frivolous, it may ... award just damages and single or double costs to the appellee."

after the involuntary petition was dismissed given the amount requested in the second application for attorney's fees and costs in this case compared with the initial award of attorney's fees and costs.[8]

Additionally, in those cases cited by Adell, the decisions were based on findings that appellate courts could award attorney's fees and costs if an appeal was frivolous as a basis for denying bankruptcy courts the authority to award attorney's fees and costs with respect to appeals. *In re Allen–Main,* 229 B.R. at 578–579 (finding that cases in both the Ninth Circuit and the Second Circuit had held that 11 U.S.C. § 523(d) which grants bankruptcy courts authority to award prevailing parties attorney's fees and costs, did not authorize the bankruptcy court to award such fees and costs incurred on an appeal and that it could "conceive of no reasonable basis to distinguish the rulings under § 523(d) from a ruling under § 303(i)"); *In re Law Center,* 304 B.R. at 138 (stating "if a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee."); *Higgins,* 379 F.3d at 709 (holding that a bankruptcy court does not have authority to award fees at the appellate level because the only authority for awarding discretionary appellate fees in bankruptcy appeals is Fed. R.App. R. 38).

While those courts focused on the power of the appellate courts to award attorney's

fees and costs pursuant to § 523(d) and Fed. R.App. R. 38, they ignore the different standards for recovering attorney's fees and costs articulated in those sources and § 303(i)(1). As noted above, 11 U.S.C. § 523(d) provides that, if a creditor requests a determination of dischargeability of a consumer debt and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified. Fed. R.App. P. 38 states, "If a court of appeals determines that an appeal is frivolous, it may ... award just damages and single or double costs to the appellee." Section 303(i)(1), however, authorizes a bankruptcy court to award attorney's fees and costs if an involuntary petition is dismissed, regardless of whether the petition was filed in bad faith, was without substantial justification, or was frivolous. Although the petitioner's motives may be taken into account, *see In re Reid,* 854 F.2d 156, 160 (7th Cir.1988); *In re Atlas Mach.,* 190 B.R. at 803, the "plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1):(1) the court must have dismissed the petition on some ground other than consent by the parties; and (2) the debtor must not have waived its right to recovery under the statute" *Higgins,* 379 F.3d at 705–706.

██ If a statute is ambiguous, a court must look to other persuasive authority in an attempt to discern legislative meaning and that other persuasive authority can include the policy rationales behind the statute. *Brilliance Audio, Inc. v. Haights*

---

8. In the initial award, the Bankruptcy Court awarded attorneys' fees and costs in the amount of $313,230.68. *See In re John Richards Homes,* 439 F.3d at 254. In its second application, HMSC seeks $1,712,974.04 as compensation for fees and expenses incurred in enforcing the judgment and defending the appeals (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 834). court and 11 U.S.C. § 105. *See In re Adell,* 296 Fed.Appx. at 839.

*Cross Communications, Inc.*, 474 F.3d 365, 371–372 (6th Cir.2007). In this case, the policies behind § 303(i) appear to support appellants' interpretation of that statute. For example, in adopting a contrary interpretation of § 303(i) in *Higgins*, the Ninth Circuit noted that "[t]his holding creates a discrepancy that only Congress can rectify. Despite Congress's clear intent to award attorney's fees and costs to an alleged debtor who successfully defends an involuntary bankruptcy bid, the debtor remains exposed to appellate attorney's fees unless it can be demonstrated that the appeal was frivolous under Rule 38." *Higgins*, 379 F.3d at 709 n. 3. The interpretation of § 303(i)(1) offered by appellants, removes that conflict and allows the bankruptcy court to award all the attorney's fees and costs incurred by an alleged debtor who successfully defends an involuntary bankruptcy bid.

▮ As argued by appellants, even a good-faith filing of such an involuntary bankruptcy petition creates onerous circumstances for a debtor. *In re Advance Press*, 46 B.R. at 702. One bankruptcy court has noted that an involuntary petition "usually chills the alleged debtor's credit and his sources of supply. It can scare away his customers. It leaves a permanent scar, even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this court." *In re SBA Factors of Miami, Inc.*, 13 B.R. 99, 101 (Bankr.S.D.Fla.1981). While § 303(i)(2) requires that an involuntary petition had been filed in bad faith before a bankruptcy court can award punitive damages, an award of attorney's fees and costs pursuant to § 303(i)(1) does not require a bad faith finding and it "is evident from the alternative provisions of § 303(i)(1) and (2) that Congress sensed there would be situations where the bur-

dens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they had created". *In re Advance Press*, 46 B.R. at 702

An award of attorney's fees and costs pursuant to § 303(i)(1) is not without limitation, but in this court's view and in light of the statutory language, case law and polices relating to 11 U.S.C. § 303(i)(1), those limitations do not restrict any awards to those fees and costs fees directly incurred in defending against the involuntary petition and getting it dismissed. The Bankruptcy Court in this case had the authority to award reasonable attorney's fees and costs incurred from all proceedings arising out of the filing of an involuntary petition if that petition is dismissed and, therefore, its decision should be reversed and the matter remanded for a decision on the merits.

## V. Conclusion

For the reasons discussed above, the court recommends that the decision of the Bankruptcy Court be **REVERSED** and that this case be remanded to the Bankruptcy Court for a decision on the merits of appellants' motion and a determination of a reasonable fee amount.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not pre-

serve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

Nov. 19, 2008.

## REPORT AND RECOMMENDATION APPEAL ON ATTORNEY'S FEES AND COSTS

### I. Introduction

This case involves an appeal by appellants Honigman, Miller Schwartz and Cohn ("HMSC") and John Richards Homes Building Co., L.L.C. ("JRH") from a September 21, 2006 order of the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") denying HMSC's request for attorney's fees and costs incurred as a result of appellee Kevin Adell's post-award conduct. The matter comes before the court on Adell's Motion for Partial Dismissal of the Appeal (D/E # 28). Adell wishes to preclude review of the bankruptcy court's denial. Appellants have filed a response in opposition to Adell's motion (D/E # 30) and Adell has filed a reply to that response (D/E # 34). For the reasons stated below, this court recommends that Adell's motion be **DENIED** on the basis that Adell waived his preclusion arguments by failing to raise them in a timely manner and by failing to address them adequately in his

motion, and that even if timely raised and adequately argued, neither claim preclusion nor issue preclusion bars appellant review by this court.

### II. Background

#### A. Underlying Case

As described by the Sixth Circuit, the underlying case in this matter involved a dispute between JRH and Kevin Adell:

As the bankruptcy court found, in December 2001, Adell and JRH entered into a Residential Building and Purchase Agreement whereby JRH, in exchange for $3,030,000, agreed to sell Adell a 1.8 acre parcel of property in Bloomfield Hills, Michigan, and to construct a home for Adell on the property, with construction to begin "within a reasonable time after the completion of building plans and issuance of permits." On February 28, 2002, the deal closed. The closing documents allocated $1,750,000 out of the $3,030,000 for the land purchase.

Over the next few months, Adell's relationship with JRH and its principal, John Shekerjian, soured. Adell began to complain about the pace of construction on his home and to contact JRH's former employees seeking negative information about JRH. He told Shekerjian that he wanted another builder to build his house and, apparently, barred JRH from the property. He also became upset about the amount he had paid for the land, contending that it was only worth $1 million instead of $1.75 million.

On June 6, 2002, after a number of conversations, meetings, letters and other interactions between Adell or his representatives and JRH or its representatives, Adell filed a civil suit against JRH and Shekerjian in the Oakland County Circuit Court. The complaint included a

number of claims, all of which essentially rested on two allegations: (1) that Shekerjian and JRH had orally told Adell that the land was worth $1,000,000, and that the home they would construct for him would have a value of $2,000,000, despite the fact that the executed sale documents allocated $1,750,000 to the value of the land, leaving at most $1,280,000 for the home construction; and (2) that Shekerjian for JRH had told Adell that construction would begin immediately after the sale closed, even though they knew that was impossible because there were "water problems" with the property, and that the resulting delay in commencing construction was not "reasonable." On June 18, 2002, JRH and Shekerjian jointly filed an answer, denying the substance of all of Adell's claims, stating affirmative defenses, and including a verified countercomplaint.

During the time between when Adell filed his state court civil suit and JRH and Shekerjian filed their responsive pleadings, Adell contacted at least two of JRH's contractors, telling them that JRH was in financial trouble and trying to persuade them to join him in filing an involuntary bankruptcy petition against JRH. Both refused.

On June 24, 2002, less than a week after JRH and Shekerjian filed their responses in the state court case and without any further discussion or communication, Adell, as the sole petitioning creditor, filed an involuntary bankruptcy petition against JRH pursuant to 11 U.S.C. § 303(b)(2). According to the petition, Adell's own claim against JRH for fraud and breach of contract was in the amount of $800,000. Adell sought to maximize the publicity attending his filing by hiring a public relations firm, Marx Layne, to publicize alleged defects in JRH's performance of its construction and financial obligations.

On July 1, 2002, JRH filed a motion to dismiss the petition. Noting that Adell's claim against JRH cited in the petition was also the basis for Adell's state court civil complaint against JRH and Shekerjian, and that JRH and Shekerjian had recently filed pleadings denying all of Adell's claims, JRH argued that Adell's claim was the subject of a "bona fide dispute," precluding its use as the basis for the petition. JRH also argued that Adell was required to have at least three petitioning creditors because JRH was an entity with 12 or more creditors. Should the petition be dismissed, JRH asked the bankruptcy court to award it fees, costs and damages pursuant to 11 U.S.C. § 303(i). On July 12, 2002, Adell's bankruptcy attorneys filed a notice that three additional creditors had joined in the filing of the petition.

On July 15, 2002, the bankruptcy court held a hearing on JRH's motion to dismiss. Ruling from the bench, the court granted the motion, concluding that Adell was not qualified to serve as a creditor in an involuntary bankruptcy because his claim against JRH was not undisputed. The court explained:

The record that is before the Court overwhelmingly establishes that there is a bona fide dispute concerning this petitioning creditor's claim against the Alleged Debtor . . . [and]

. . . that there are significant genuine issues of material fact concerning any disposition of the issues raised in the [state court case], . . . such fundamental issues as which of the parties breached the contract, which of the parties was the first to breach the contract. There are clear issues of fact concerning particularly the fraud claim and the statutory claim.

Having rejected the sole petitioning creditor, Adell, the bankruptcy court ruled that it could not permit the joinder of other putative creditors. Adell did not appeal the bankruptcy court's dismissal of the petition.

After a period of discovery, followed by a two-day evidentiary hearing, the bankruptcy court granted JRH's motion on April 25, 2003. In a thorough opinion, the court found that Adell filed the involuntary bankruptcy petition against JRH in bad faith and awarded JRH compensatory damages in the amount of $4,100,000, punitive damages in the amount of $2,000,000, and attorneys' fees and costs in the amount of $313,230.68. [*In re John Richards Homes Bldg. Co., L.L.C.*, 439 F.3d 248, 252–254 (6th Cir.2006) (internal citations omitted).]

### B. Post–Judgment Events

On May 2, 2003, Adell appealed the Bankruptcy Court's decision. *See In re John Richards Homes Building Co., L.L.C.*, 312 B.R. 849, 854 (E.D.Mich.2004).

On May 6, 2003, while the appeal was pending, Adell entered into a purchase agreement for a $2.8 million home in Florida. *See In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 593 (Bankr. E.D.Mich.2003). On May 8, 2003, he closed on the purchase of the Florida home. *See In re John Richards Homes*, 298 B.R. at 593.

Adell subsequently filed an action in Florida state court seeking a declaratory ruling that his recently purchased Florida home was protected as a homestead under the Florida Constitution. JRH removed the state court action to the Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy Court") and filed a motion to transfer the action to the Michigan Bankruptcy Court. The Florida Bankruptcy Court granted the motion to transfer on June 9, 2003. *See In re Adell*, No. 04–23684, *5 (M.D.Fla. May 11, 2005).

On May 21, 2003, JRH filed a motion in the Bankruptcy Court for miscellaneous post-judgment relief, seeking the aid of the Bankruptcy Court to collect on its judgment. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 281) Specifically, JRH argued that, because Adell had used the proceeds from his Michigan assets to purchase the Florida home immediately after the judgment was entered, he should be ordered to sell that home and remit the proceeds in partial satisfaction of the judgment. *See In re John Richards Homes*, 298 B.R. at 593.

On September 17, 2003, the Bankruptcy Court granted JRH's motion in part after finding that Florida's homestead exemption, as construed by Florida Supreme Court, was preempted by federal law and did not provide any protection for a party who had filed an involuntary bankruptcy petition in bad faith and who was attempting to protect his assets from the substantial compensatory and punitive damages awards entered against him by the Bankruptcy Court. *In re John Richards Homes*, 298 B.R. at 605–606. The Bankruptcy Court further found that, in the alternative, even if the Florida homestead exemption was not preempted, Adell did not qualify for it because the Florida house was not his homestead. *See In re John Richards Homes*, 298 B.R. at 607–608. The Bankruptcy Court ordered that Adell sell the Florida property within sixty (60) days and turn the proceeds from that sale over to JRH. *See In re John Richards Homes*, 298 B.R. at 606. The Bankruptcy Court also ordered that Adell turn over certain assets to the U.S. Marshals and that the Michigan Secretary of State record a lien in favor of JRH on any vehicles

still titled in Adell's name. *See In re John Richards Homes,* 298 B.R. at 609.

On November 14, 2003, Adell sought relief under Chapter 11 of the Bankruptcy Code in the Florida Bankruptcy Court, immediately triggering the operation of the automatic stay imposed by Section 362 of the Bankruptcy Code and stopping any further collection attempts by JRH. *See In re Adell,* 321 B.R. 573, 577 (Bankr. M.D.Fla.2005).

In response, JRH first moved to transfer Adell's Chapter 11 case from the Florida Bankruptcy Court to the Bankruptcy Court in Michigan. *See In re Adell,* 371 B.R. 541, 543 (Bankr.M.D.Fla.2007) That motion was denied. *See In re Adell,* 371 B.R. at 543. Having failed to obtain a transfer to the Michigan Bankruptcy Court, JRH tried, unsuccessfully to transfer the case to a different judge in the Middle District of Florida. *See In re Adell,* 371 B.R. at 543.

On February 10, 2004, JRH filed a motion to dismiss Adell's Chapter 11 filing on the basis that it was filed in bad faith. On May 28, 2004, the Florida Bankruptcy Court, after extensive hearings, entered an order and opinion denying JRH's motion to dismiss. Specifically, the Florida Bankruptcy Court held that, while the circumstances surrounding Adell's Chapter 11 filing counseled in favor of order dismissing Chapter 11 case for Adell's lack of good faith in filing it, the court would give Adell one last opportunity to obtain confirmation of amended plan and would dismiss case only if amended plan could not be confirmed. *See In re Adell,* 310 B.R. 460, 466–468 (Bankr.M.D.Fla.2004).

On February 25, 2004, Adell filed a Chapter 11 plan of reorganization which proposed to pay the judgment in full over time once the judgment became final and no longer appealable. JRH objected to that plan. *See In re Adell,* 371 B.R. at 543. Subsequently, Adell amended the proposed plan to accelerate payment of the judgment, pay interest on the judgment, and to secure the judgment to the extent of at least $3.0 million with a cash escrow. JRH continued to object. *See In re Adell,* 371 B.R. at 543.

On August 5, 2004, the United States District Court for the Eastern District of Michigan affirmed the Bankruptcy Court's award of JRH's costs, attorneys' fees, compensatory damages and punitive damages pursuant to 11 U.S.C. § 303(i). *In re John Richards Homes Building Co., L.L.C.* 312 B.R. 849, 867 (E.D.Mich.2004). Subsequently, on September 1, 2004, Adell appealed the District Court's affirmation of the Bankruptcy Court's award. (Case No. 03–40109, D/E # 20)

On October 27, 2004, the Florida Bankruptcy Court entered an Order denying Adell's Fourth Amended Chapter 11 Plan and set a hearing for November 18, 2004, to consider a dismissal of the bankruptcy case. *See In re Adell,* 371 B.R. at 544. That Order was challenged by Adell, who filed a Motion for Reconsideration on November 5, 2004. *See In re Adell,* 371 B.R. at 544. On March 22, 2005, the Florida Bankruptcy Court granted Adell's request for reconsideration. *See In re Adell,* 371 B.R. at 544.

In response to the Reconsideration Order, Adell proposed a plan to place $7,000,000 in escrow to be used to satisfy the judgment if it was affirmed on appeal. That plan was to be funded by Adell's employers and by a mortgage on Adell's homestead. *In re Adell,* 371 B.R. at 544.

On February 1, 2005, the Florida Bankruptcy Court granted Adell's request to avoid, on exemption impairment grounds, the lien on the Florida residence. *In re Adell,* 321 B.R. 573, 578 (Bankr.M.D.Fla. 2005). As found by the Florida Bankruptcy Court:

The difference between the existing facts and the facts at the time the Michigan Bankruptcy Court rejected the claim should be quite evident. The Debtor's homestead exemption claim presented to this Court is in the context of an already pending bankruptcy case of the Debtor. Based on the evidence presented to this Court, this Court is satisfied that the Debtor complied with the residency requirements of Section 522(b)(2)(A), that he was a bone fide resident of Florida at the time he filed his Petition for relief under Chapter 11 in this Court, therefore, he is entitled to the homestead protection guaranteed by Article X, Section 4 of the Florida Constitution. Thus, the Naples residence of the Debtor is exempt and JRH cannot compel the same to be sold to satisfy the Judgment of the Michigan Bankruptcy Court based on the sanction award granted to JRH. [*In re Adell,* 321 B.R. at 578.]

On May 11, 2005, the Florida District Court, considering JRH's appeal of the Florida Bankruptcy Court's denial of JRH's initial motion to dismiss the Chapter 11 case reversed the Florida Bankruptcy Court's ruling and held that the denial was in error. According to the Florida District Court, the Florida Bankruptcy Court abused its discretion by finding that Adell met the factors for filing his Chapter 11 Petition in bad faith while failing to dismiss the Chapter 11 Petition. The Florida District Court also ordered the clerk to enter a judgment. *See In re Adell,* No. 03–23684, *13–14 (M.D.Fla. May 11, 2005).

However, on May 12, 2005 and before an order dismissing the case could be entered, Adell filed a notice that he was voluntarily converting his bankruptcy to a case under Chapter 7. *See In re Adell,* 371 B.R. at 544. On May 17, 2005, the Florida Bankruptcy Court entered an order converting

Adell's Chapter 11 Case to a case under Chapter 7. *See In re Adell,* 371 B.R. at 544.

On July 22, 2005, JRH filed a second motion to dismiss and, on October 4, 2005, the Florida Bankruptcy Court entered an order granting JRH's motion to dismiss Adell's Chapter 7 Case after finding that cause existed for dismissal because Adell's filing was not supported by the well-established policy aims of Chapter 7. *See In re Adell,* 332 B.R. 844, 848–849 (Bankr. M.D.Fla.2005).

On February 14, 2006, the Florida Bankruptcy Court entered an order reaffirming the order on the motion to dismiss and denying Adell's Emergency Motion for Reconsideration and Motion for Stay Pending Reconsideration or Appeal. *See In re Adell,* 343 B.R. 717, 722 (Bankr.M.D.Fla. 2006) ("this Court is satisfied that there is nothing stated in [Adell's] Emergency Motion for Reconsideration which would warrant this court to set aside its Order on Motion to Dismiss.").

On March 1, 2006, the Sixth Circuit affirmed both the Bankruptcy Court's award and the District Court's approval of that reward. *See In re John Richards Homes Bldg. Co., L.L.C.,* 439 F.3d 248, 252 (6th Cir.2006)

On April 3, 2006, Adell paid the judgment in full with interest. Included in the payment were the punitive damages, costs and attorneys' fees that the Bankruptcy Court awarded JRH in defending the involuntary case and obtaining the Judgment. *See In re Adell,* 371 B.R. 541, 544 (Bankr.M.D.Fla.2007).

### C. Litigation After Payment of Judgment

#### 1. JRH's Motion for Sanctions in Florida Bankruptcy Court

Following payment of the judgment, JRH filed a motion for sanctions in the

Florida Bankruptcy Court. On April 7, 2006, the Florida Bankruptcy Court entered an order denying JRH's motion to impose sanctions on the basis that Adell's petition had been dismissed and, therefore, it did not retain jurisdiction to issue any further orders in that case. *See In re Adell*, No. 2:06–cv–276–FtM–29SPC, 2006 WL 3827438, *1 (M.D.Fla. December 27, 2006). On April 21, 2006, the Florida Bankruptcy Court denied reconsideration of that motion as without merit, and on April 30, 2006, JRH filed a notice of appeal. *In re Adell*, 2006 WL 3827438 at *1. On December 27, 2006, the United States District Court for the Middle District of Florida issued an opinion and order granting JRH's motion to remand. *In re Adell*, 2006 WL 3827438 at *1. According to the Florida District Court, the case was to be remanded to the Florida Bankruptcy Court to revisit JRH's motion for sanctions on the merits or to indicate that its prior order was based on the merits as well as lack of jurisdiction. *In re Adell*, 2006 WL 3827438 at *1.

On March 28, 2007, the Florida Bankruptcy Court denied JRH's motion for sanctions. In doing so, the Florida Bankruptcy Court found that, while JRH could find some support for its position in the Florida Bankruptcy Court's previous rulings:

It should be noted that the imposition of sanctions is a matter of discretion, and this Court had the power and authority to deny the Motion in order to permit Adell's attempt to resolve this problem within the confines of Chapter 11. The fact that Adell failed to obtain confirmation and his case was ultimately dismissed is of no consequence in considering the JRH's Motion to Impose Sanctions. Adell rightfully relied on this Court's approval to pursue all available means to save his homestead. The post-filing litigation for which JRH now seeks sanctions was primarily initiated by JRH, who relentlessly pursued its claim and objected to the Debtor's every attempt to achieve rehabilitation through confirmation of his Chapter 11 Plans.

This Court is satisfied that Adell attempted to pursue a legitimate goal within the utmost of his ability and, therefore, to impose a sanction would be a double punishment in addition to the $2 million judgment imposed by the Michigan Bankruptcy Court. In addition, considering the totality of the circumstances, this Court is satisfied that the Order entered by this Court was on the merits and, therefore, any further sanctions would be improper. [*In re Adell*, 371 B.R. 541, 545–546 (Bankr. M.D.Fla.2007).]

On March 18, 2008, the Florida District Court affirmed the Florida Bankruptcy Court's decision to deny sanctions. In that decision, the Florida District Court found that:

[The Florida Bankruptcy Judge] clearly recognized his power and authority to impose sanctions and that such a decision was a matter of discretion. [The Florida Bankruptcy Court] thus followed the correct legal standards. There is no claim that [the Florida Bankruptcy Court] followed improper procedures in making his decision not to impose sanctions, and the record reflects no such procedural defect. The Court's review of the record does not establish that [the Florida Bankruptcy Court's] factual findings are clearly erroneous. [The Florida Bankruptcy Court] recognized that different portions of his prior findings could be cited by the parties supporting their respective positions, but in the end determined that sanctions were not warranted under all the circum-

stances of the cases. This decision is clearly within the range of choices available to the judge as a matter of his discretion. Since there has been no abuse of discretion, [the Florida Bankruptcy Court's] decision not to impose sanctions is affirmed. [*In re Adell,* No. 2:07–cv–361–FTM–29SPC, 2008 WL 746833, *2 (M.D.Fla. March 18, 2008).]

On October 17, 2007, the Eleventh Circuit issued an opinion affirming the Florida District Court's opinion. In that decision, the Eleventh Circuit first found that, while the Florida Bankruptcy Court had authority under its inherent powers and 11 U.S.C. § 105(a) to impose sanctions, awarding sanctions is a matter of discretion and a finding of bad faith does not require the imposition of sanctions. *See In re Adell,* 296 Fed.Appx. 837, 839–840 (11th Cir.2008) The Eleventh Circuit also found that

> Given the discretionary nature of sanctions, we are satisfied by the bankruptcy court's decision that "Adell attempted to pursue a legitimate goal within the utmost of his ability and, therefore, to impose a sanction would be a double punishment in addition to the $2 million judgment imposed by the Michigan Bankruptcy Court." The bankruptcy court's power to sanction "must be exercised with restraint and discretion." The bankruptcy court exercised that restraint appropriately here.
>
> Furthermore, the district court did not abuse its discretion by affirming the bankruptcy court. We agree with the district court that "[the Florida Bankruptcy Court] clearly recognized his power and authority to impose sanctions and that such a decision was a matter of discretion. [The Florida Bankruptcy Court] thus followed the correct legal standards." [The Florida Bankruptcy Court] has not made any clear error of

judgment. Indeed, both the bankruptcy court and the district court were well within the bounds of their authority. [*In re Adell,* 296 Fed.Appx. at 839–840 (internal citations omitted).]

## 2. JRH's Motion for Additional Punitive Damages in Bankruptcy Court

On April 13, 2006, JRH filed a "Motion for Assessment of Additional Punitive Damages" in the Bankruptcy Court. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 834) In that motion, JRH sought sanctions on the basis that Adell's post-judgment conduct constituted abuse of process and interference with the Bankruptcy Court's decrees. Adell filed an objection to the motion (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 879) and the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006. On September 21, 2006, the Bankruptcy Court denied JRH's motion for assessment of additional punitive damages. *In re John Richards Bldg. Co., L.L.C.,* No. 02–54689–R, 2006 WL 3230009 (Bankr.E.D.Mich. September 21, 2006). In denying that motion, the Bankruptcy Court stated:

> The Court declines to sanction Adell, either pursuant to any inherent power it may have or pursuant to § 105. Contrary to JRH's assertion, the Court did not order Adell to pay JRH $6.413 million. The Court entered a judgment for that amount. A money judgment is not a court order. To the extent that Adell's conduct in the various courts warrants sanctions, JRH is free to seek redress in those courts. [*In re John Richards Bldg.,* 2006 WL 3230009 at *2.]

On October 3, 2006, JRH filed a notice of appeal with respect to the Bankruptcy Court's denial of its motion for assessment of additional punitive damages (Case No. 06–14356, D/E # 1). On November 19,

2008, this court issued a report and recommendation finding that the decision of the Bankruptcy Court should be affirmed (Case No. 06–14356, D/E # 28). Both Adell and JRH filed objections to that report and recommendation (Case No. 06–14356, D/E # 30, # 31) and those objections are pending before the District Court.

### 3. HMSC's Second Application for Attorneys' Fees and Expenses

On April 21, 2006, HMSC, the law firm representing JRH in this matter, filed a "Second Application for Compensation of Attorney Fees and Expenses" in the Bankruptcy Court. (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 834). In that application, HMSC sought, pursuant to 11 U.S.C. § 303(i), $1,712,974.04 as compensation for fees and expenses incurred after entry of the judgment. Adell filed an objection to that application (Bankr.E.D. Mich. Petition No. 02–54689; D/E # 880) and the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006. On September 21, 2006, the Bankruptcy Court denied HSMC's second application. *See In re John Richards Homes, Co. L.L.C.*, No. 02–54689–R, 2006 WL 3228523 (Bankr.E.D.Mich. September 21, 2006). In denying that application, the Bankruptcy Court noted that (1) HMSC not only sought attorney's fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment, and that (2) few cases have addressed the precise issue of whether § 303(i)(1) authorizes the bankruptcy court to award fees and costs beyond those directly incurred in defending the involuntary petition. In conclusion the Bankruptcy Court stated:

> [HMSC] not only seeks attorney fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment. HMS & C has offered no legal support for this request. In light

of the caselaw to the contrary, the Court must deny its application for a second award of attorney fees and costs. [*In re John Richards Homes*, 2006 WL 3228523 at *2.]

### D. Appeals from Bankruptcy Court

### 1. Appellants' Brief on Appeal

On October 3, 2006, JRH and HMSC filed a notice of appeal with respect to the Bankruptcy Court's denial of HSMC's second application for compensation of attorney fees and expenses (D/E # 1). In their appellate brief (D/E # 3), JRH and HMSC argued that the Bankruptcy Court erred when it found that it could not award the attorney's fees and costs JRH incurred while trying to collect the judgment. According to appellants, the Bankruptcy Court's decision ignored the statutory text, relied upon wrongly-decided cases, and frustrated legislative intent.

In his appellate brief (D/E # 10), Adell argued that the Bankruptcy Court lacked jurisdiction over HMSC's application because the bankruptcy case has been closed, HMSC was only a creditor of JRH, and because JRH has not sought relief from the judgment, which has been paid. Adell also argues that § 303(i)(1) does not apply to post-judgment fees and that the Bankruptcy Court's interpretation is consistent with both the comprehensive scheme governing recovery of fees and costs as well as the case law regarding the recovery of appellate fees and sanctions.

In their reply brief (D/E # 13), JRH and HMSC asserted that Adell's arguments regarding jurisdiction are meritless and should be rejected. Appellants also reiterated that the Bankruptcy Court could award attorney's fees and costs without regard to cause and without regard to whether the fees and costs were expended

before or after dismissal of the involuntary petition.

On November 19, 2008, this court issued a report and recommendation finding that the decision of the Bankruptcy Court should be reversed and that this case should be remanded to the Bankruptcy Court for a decision on the merits of the request (D/E # 29). In this court's view, while the Bankruptcy properly exercised jurisdiction, it erred when it determined that it did not have authority under 11 U.S.C. § 303(i) to award attorneys' fees and costs beyond those directly incurred in defending the involuntary petition.

Adell filed objections to this court's report and recommendation (D/E # 31) and those objections remain pending before the District Court.

### 2. Adell's Motion for Partial Dismissal

On November 10, 2008, Adell filed a motion for partial dismissal of the appeal (D/E # 28). In that motion, Adell argues that the portions of the appeal must be dismissed on the basis of res judicata or collateral estoppel given the Eleventh Circuit opinion affirming the Florida District Court's opinion affirming the Florida Bankruptcy Court's decision to deny sanctions.

On December 4, 2008, appellants filed a response to Adell's motion for partial dismissal (D/E # 30). In that response, appellants argue that Adell waived the arguments found in the motion by failing to raise them in a timely manner and by failing to adequately address them in his motion. Appellants also argue that neither res judicata not collateral estoppel applies in this action because the Florida Bankruptcy case involved different issues.

On December 15, 2008, Adell filed a reply to appellants' response (D/E # 34).

In that reply, Adell argues that his arguments are not waived because, even if there was a delay in making those arguments, appellants did not suffer any prejudice and because he adequately briefed his res judicata and collateral estoppel arguments. Adell also argues that the Eleventh Circuit's opinion has preclusive effect and it conclusively bars the portion of appellants' claim that concerns conduct in Florida.

### III. Standard of Review

District courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges. *See* 28 U.S.C. § 158(a)(1). The District Court reviews a bankruptcy court's conclusions of law de novo. *See In re Holland,* 151 F.3d 547, 548 (6th Cir.1998).

### IV. Discussion

 The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication, claim preclusion and issue preclusion. *See J.Z.G. Resources, Inc. v. Shelby Ins. Co.,* 84 F.3d 211, 214 (6th Cir.1996); *Liona Corp. v. PCH Assocs. (In re PCH Assocs.),* 949 F.2d 585, 594 (2d Cir.1991). The general rule of claim preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). "Claim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action." *J.Z.G. Resources,* 84 F.3d at 214 (emphasis in original). Under issue preclusion, also called collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that deter-

mination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation. *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

 As a preliminary matter, this Court must address the question of what law governs the issues of res judicata and collateral estoppel. A federal court applies federal law in determining the preclusive effect of a prior federal judgment. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ("It has been held in non-diversity cases since *Erie R. Co. v. Tompkins,* that the federal courts will apply their own rule of res judicata" (citation omitted)); Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."); *J.Z.G. Resources,* 84 F.3d at 213 (finding that federal law governs the preclusive effect of a prior federal diversity judgment). Moreover, while res judicata generally looks to the court rendering the judgment to determine the scope of the judgment, *J.Z.G. Resources,* 84 F.3d at 213–214 (citing *Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir.1962)), this court need not endeavor to discern whether the Eleventh Circuit would apply "federal law" in that respect any differently from the Sixth Circuit as federal courts generally apply a single "accepted formulation of res judicata for federal court use." *Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 755 (1st Cir.1994). Similarly, the Seventh Circuit has stated that the "rules that govern the extent to which one judgment in a federal case precludes litigation in a second federal case are part of the federal common law." *Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc.,* 814 F.2d 358, 364 (7th Cir.1987) (citing *University of Tennessee v. Elliott,* 478 U.S. 788, 106

S.Ct. 3220, 3225–27, 92 L.Ed.2d 635 (1986)).

## A. *Waiver*

### 1. **Undue Delay**

 Appellants first argue that Adell's arguments based on res judicata are waived because Adell failed to raised them in a timely manner. As a preliminary matter, it must be determined what judgment is relevant to Adell's arguments. Adell's motion and reply cite to the Eleventh Circuit opinion without discussing why it would be the relevant decision for purposes of res judicata and claim preclusion while appellants argue that the Florida Bankruptcy Court decision would be the applicable judgment. As argued by appellants, a bankruptcy court decision can be a final judgment for purposes of res judicata. *See Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 578–579 (6th Cir.2008) (holding that a bankruptcy court's sale order is a final order for res judicata purposes, not only because it is in line with Sixth Circuit rulings that an order confirming a reorganization is a final order, but also because it is in line with the policy behind res judicata). *See also I.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1548 n. 8 (11th Cir.1986) (finding that the bankruptcy court's ruling on core proceedings, if a final judgment, would be res judicata in any subsequent proceeding); *Bank of Lafayette v. Baudoin (In re Baudoin),* 981 F.2d 736, 742 (5th Cir.1993) ("Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for res judicata purposes.").

 Moreover, the fact that the decision of the Florida Bankruptcy Court was appealed does not change its effect as a final judgment. *See Smith v. S.E.C.,* 129 F.3d 356, 362 n. 7 (6th Cir.1997) ("The

pending appeal of the district court's judgment ... does not deprive that judgment of res judicata effect."); *Commodities Export Co. v. U.S. Customs Serv.*, 957 F.2d 223, 228 (6th Cir.1992) ("it is well established that a final trial court judgment operates as res judicata while an appeal is pending"); *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir.1988) ("[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.").

■ Claim and issue preclusion only require that the judgment or ruling be issued by a court of competent jurisdiction. *U.S. v. Vasilakos*, 508 F.3d 401, 406 (6th Cir.2007); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir.2006). Adell does not dispute that the Florida Bankruptcy Court was a court of competent jurisdiction and, in this Court's view, the Florida Bankruptcy Court's decision would be the one applicable to Adell's arguments

■ Since the Florida Bankruptcy Court decision is the relevant decision for purposes of res judicata, Adell would have been able to raise those arguments at any time after March 28, 2007. However, Adell waited over a year and a half, until November 10, 2008, to file his motion for partial dismissal. The failure to plead or raise in a timely manner matters calling for the application of the doctrines of res judicata may be regarded as a waiver. For example, in *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 735 (9th Cir.1988), the defendant argued that the plaintiff was barred by res judicata from proceeding with its case, but the Ninth Circuit disagreed because the defendant

had delayed raising the argument. The Ninth Circuit first noted that the defendant had failed to raise the preclusion defense in its original answer to the plaintiff's complaint and it later found preclusion defenses must always be raised before trial. *Kern Oil*, 840 F.2d at 735. Similarly, while this issue almost always arises in the context of the early stages of a case at the trial level, a number of other cases have held that undue delay in raising preclusion defenses may result in waiver of those arguments. *See, e.g., U.S. v. Shanbaum*, 10 F.3d 305 (5th Cir.1994); *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir.1994). *North Pacifica, LLC v. City of Pacifica*, 366 F.Supp.2d 927, 929 (N.D.Cal.2005).

■ Adell offers no justification for his delay in bringing his res judicata or collateral estoppel arguments. Instead, he argues that there was no prejudice. As noted by Adell, the Sixth Circuit has excused delay where there has been no prejudice. *See, e.g., Golden v. C.I.R.*, 548 F.3d 487, 494 (6th Cir.2008) (allowing a res judicata defense to be raised by motion where no prejudice was shown and plaintiff had an opportunity to file an additional brief). Here, appellants were able to fully respond to Adell's new arguments,[1] but the goals of the preclusion doctrines include promoting judicial economy and shielding litigants (and the judicial system) from the burden of re-litigating issues. *Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir.2005); *Hanger Prosthetics & Orthotics East, Inc. v. Henson*, 299 Fed.Appx. 547, 555 (6th Cir.2008). In this case, those goals have not been met because of Adell's undue delay in making his arguments, and issues that Adell now asserts are barred have already been re-litigated in a supplemental brief, at oral

---

1. There was no oral argument on this motion, but that is because this Court determined that there was no need for oral argument and

dispensed with oral arguments in accordance with Local Rule 7.1(e) (2). (D/E # 36)

argument, and in this court's Report and Recommendation. Because the delay has thwarted the purpose of the preclusion doctrine, Adell's arguments based on res judicata and collateral estoppel should be deemed waived. *See Gilbert*, 413 F.3d at 580 ("If the prevailing party in a previous action fails to raise collateral estoppel as a defense to a subsequent action, and if the parties in fact re-litigate the issue, then the party who failed to raise collateral estoppel should be deemed to have waived it since the purpose served by collateral estoppel [to prevent the re-litigation of issues] has been fatally compromised.")

### 2. Failure to Adequately Address Arguments

■ Appellants also argue that Adell waived his arguments based on res judicata and collateral estoppel by failing to adequately address those arguments in his motion for partial dismissal. Arguments, including preclusion arguments, that are woefully underdeveloped are deemed waived. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997); *EB–Bran Productions v. Warner*, 242 Fed. Appx. 311, 313 (6th Cir.2007). *See also Blue v. Coca–Cola Enterprises, Inc.*, 43 Fed.Appx. 813, 816 (6th Cir.2002) (conclusory statements in a brief are not sufficient to satisfy burden of proof). In this case, Adell's arguments on the basis of claim preclusion or issue preclusion should be deemed waived in light of Adell's failure to adequately address them.

This Court would first note that Adell's motion for partial dismissal, memorandum in support of his motion, and his reply brief are inconsistent as to what exactly he seeks to have dismissed and that inconsistency prevents meaningful review of Adell's motion. While Adell first requests the court "grant this motion and dismiss those portions of the appeal filed by Hon-

igman and JRH seeking the relief that the Eleventh Circuit has rejected" (Appellant's Motion for Partial Dismissal, p. ii), he later asserts in his Statement of Questions Presented that this case involves whether "the portions of the appeal of the bankruptcy court's order declining to award additional attorneys' fees based on Adell's conduct in Florida must be dismissed." (Memorandum in Support of Motion for Partial Dismissal, p. 1) Subsequently, Adell states that "The Eleventh Circuit's decision has res judicata or collateral estoppel effect and conclusively bars appellants' claim that (1) Adell's behavior in Florida somehow supports an award of further punitive damages, or that (2) JRH was not the 'relentless' aggressor in the proceedings in Florida and thus that the additional attorneys' fees and costs were somehow Adell's fault and responsibility." (Memorandum in Support of Motion for Partial Dismissal, p. 8) Later, Adell asserts that "the portion of the appeal grounded on Adell's Florida conduct must be dismissed" and "those portions of the appeal based on Adell's conduct in Florida must be dismissed." (Memorandum in Support of Motion for Partial Dismissal, p. 10) In his reply brief, Adell appears to focus on the issue of whether Adell engaged in bad faith in Florida (Appellant's Reply Brief, p. 4), but he also, again, states that there should be dismissal of all claims "based on Adell's conduct in Florida." (Appellant's Reply Brief, p. 5)

The relief most frequently mentioned by Adell is a ruling that res judicata or collateral estoppel bars the portions of the appeal based on Adell's conduct in Florida. However, that broad argument is clearly invalid in light of the fact that Adell engaged in other conduct in Florida besides filing the petition for bankruptcy discussed by Adell. For example, Adell filed an action in Florida state court seeking a declaratory ruling that his recently pur-

chased Florida home was protected as a homestead under the Florida Constitution. His conduct in that regard is clearly not at issue in the Eleventh Circuit's opinion.

Additionally, Adell's continuing reliance on the Eleventh Circuit opinion, rather than the Florida Bankruptcy Court decision, as the basis for his arguments also demonstrates Adell's failure to develop his arguments. Adell's motion for partial summary judgment does not discuss why the Eleventh Circuit opinion is the relevant judgment, nor does he respond in his reply brief to appellants' argument that the Florida Bankruptcy Court decision would be the relevant judgment. Instead, Adell continues to base his arguments on the Eleventh Circuit opinion while completely ignoring the question of whether it is proper to do so. As discussed above, this court agrees with appellants' argument that the decision of the Florida Bankruptcy Court is the relevant judgment against which to measure if and when matters are precluded.[2]

The inconsistency in the relief Adell seeks, as well as the other problems with Adell's motion, raise additional concerns given the lack of detail in Adell's motion. As noted by appellants, Adell only provides a cursory basis for asserting that the appeal is precluded and he freely mixes in arguments relating to two separate appeals[3] without making any attempt to distinguish between the facts, claims, legal authority, and other differences between the two appeals.

■■■ "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir. 1997). In this case, by inconsistently describing what he asserts is barred by res judicata or collateral estoppel, ignoring the question of what case underlies his arguments, and only offering a cursory analysis, Adell has left it to the court to develop his arguments. As a consequence, they should be deemed waived.

### B. Res Judicata/Claim Preclusion

■■■ Res judicata, often called "claim preclusion," is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy; it bars claims that could have been litigated as well as those which were. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Courts apply claim preclusion to promote the finality of judgments, which in turn increases certainty, discourages multiple litigation and conserves judicial resources. *Federated Department Stores v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

■■■ With respect to claim preclusion in federal courts. "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Accordingly, "[u]nder the doctrine of res judicata, also known as claim preclusion, a party is precluded from bringing a

---

2. As noted by appellants, by continuing to rely on the Eleventh Circuit opinion, which is more recent than the Florida Bankruptcy Court decision, Adell mistakenly shortens the length of time that has passed in which he could have made the preclusion arguments.

3. The other appeal relates to the Bankruptcy Court's denial of JRH's motion for additional punitive damages.

claim when there exists (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies[';] (3) an issue in the subsequent action which was litigated or should have been litigated in the prior action; and (4) an identity of the causes of action." *Golden v. C.I.R.,* 548 F.3d 487, 494–495 (6th Cir.2008) (quoting *United States v. Vasilakos,* 508 F.3d 401, 406 (6th Cir.2007)) (alteration in original). *See also Jaffree v. Wallace,* 837 F.2d 1461, 1466 (11th Cir.1988) ("In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.")

■ Adell argues that the Florida Bankruptcy Court decision (or maybe the Eleventh Circuit decision) and this case are identical. Appellants disagree. Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 484 (6th Cir.1992) (quoting *Westwood Chemical Co. v. Kulick,* 656 F.2d 1224, 1227 (6th Cir.1981)). The Sixth Circuit has specifically rejected applying a "narrow" test for identity used by other circuits in conjunction with bankruptcy proceedings. *See Winget,* 537 F.3d at 580–81 (declining to adopt a test narrowly defining "identity").

■ Under this broad look, the cases would meet the fourth element of claim preclusion. Both actions arose out of Adell's post-judgment activities. Appellants argue that the causes of actions are not identical because each sought different relief and were based on different legal grounds. However, appellants' argument relates more to analysis of whether a particular issue was raised rather than whether the causes of action arise from "the same transaction or series of transactions." The latter is enough for the fourth element of claim preclusion. *See Micro–Time Mgmt. Sys., Inc. v. Allard & Fish, P.C.,* 983 F.2d 1067 (6th Cir.1993) (noting that a claim is identical if "the claims arose out of the same transaction or series of transactions," or if "the claims arose out of the same core of operative facts").

■ Appellants are correct, however, with respect to their argument that the third element, that is, whether an issue in this action was litigated or should have been litigated in the Florida Bankruptcy Court, bars review. As discussed above, in the prior action in the Florida Bankruptcy Court, JRH sought sanctions with respect to Adell's actions in the Florida Bankruptcy Court pursuant to the inherent power of the court or 11 U.S.C. § 105(a).[4] Under Section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Orders under § 105(a) may include sanctions, but the bankruptcy court is not required to do so as § 105(a) is, on its face, a discretionary tool for the courts. *In re Adell,* 296 Fed.Appx. at 839. Under its inherent powers, the bankruptcy court has the discretionary power to impose

---

4. In its decision denying sanctions, the Florida Bankruptcy Court does not identify the legal basis for any sanctions it might have imposed. *See In re Adell,* 371 B.R. 541. However, the subsequent Eleventh Circuit opinion discussed JRH's motion with respect to both the inherent power of the

sanctions under appropriate circumstances. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). An "[i]nvocation of a courts inherent power requires a finding of bad faith." *In re Mroz,* 65 F.3d 1567, 1575 (11th Cir. 1995) (citing *Chambers,* 501 U.S. at 49, 111 S.Ct. 2123) However, a finding of bad faith does not compel a court to impose sanctions. *In re Adell,* 296 Fed.Appx. at 839.

The Michigan Bankruptcy Court denied appellants attorneys' fees and costs with respect to Adell's post-award conduct under 11 U.S.C. § 303(i)(1). It is this issue that appellants wish reviewed. This is not an issue presented to or decided by or which could have been presented to the Florida Bankruptcy Court. Therefore, review is not barred.

 Title 11 U.S.C. § 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-
>
> (1) against the petitioners and in favor of the debtor for-
>
> (A) costs;
>
> (B) a reasonable attorney's fee; or
>
> (C) "any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title;"
>
> (2) against any petitioner that filed the petition in bad faith, for-
>
> (A) any damages proximately caused by such filing; or
>
> (B) punitive damages.

Section 303(i)(1) authorizes a bankruptcy court to award attorney's fees and costs if an involuntary petition is dismissed, regardless of whether the petition was filed in bad faith, was without substantial justification, or was frivolous. Although a Bankruptcy petitioner's motives may be taken into account, *see In re Reid,* 854 F.2d 156, 160 (7th Cir.1988); *In re Atlas Mach. and Iron Works, Inc.,* 190 B.R. 796, 803 (Bankr.E.D.Va.1995), the "plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1):(1) the court must have dismissed the petition on some ground other than consent by the parties; and (2) the debtor must not have waived its right to recovery under the statute" *Higgins v. Vortex Fishing Systems, Inc.,* 379 F.3d 701, 705–706 (9th Cir.2004). *See also In re Advance Press & Litho, Inc.,* 46 B.R. 700, 702 (Bankr.D.Colo.1984) (finding that, while § 303(i)(2) requires that an involuntary petition had been filed in bad faith before a bankruptcy court can award punitive damages, an award of attorney's fees and costs pursuant to § 303(i)(1) does not require a bad faith finding and it "is evident from the alternative provisions of § 303(i)(1) and (2) that Congress sensed there would be situations where the burdens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they had created.")

 Thus, as correctly argued by appellants, the Michigan Bankruptcy Court decision and the Florida Bankruptcy Court decision were based on different legal grounds, different types of relief, and applied different standards. Section 105(i)(1) of the Bankruptcy Code permits an award of attorneys' fees and costs where an involuntary petition has been dismissed, regardless of whether of whether the involuntary petition was filed in bad faith or not. In response to HMSC's motion pursuant to § 105(i)(1), the Bankruptcy Court found that did not have the authority to award fees and costs beyond those directly

incurred in defending the involuntary petition. Title 11 U.S.C. § 105(a) and the inherent power of the courts permit an award of sanctions in appropriate circumstances. In response to JRH's motion pursuant to § 105(a) and the court's inherent power, the Florida Bankruptcy Court found that Adell should not be sanctioned for filing the Chapter 11 Petition and Chapter 7 Petition. In light of those fundamental differences between the two actions, although rising from the same series of transactions, Adell's argument that an issue in this case was litigated or could have been litigated in the Florida Bankruptcy case is without merit and, consequently, his argument on the basis of claim preclusion should be rejected.

Adell also asserts that the attorneys' fee and issue would have been litigated in the Florida Bankruptcy Court had JRH prevailed on the motion for sanctions, but that assertion is without merit as well. The Florida Bankruptcy Court may have awarded attorneys' fees and costs if JRH had prevailed, but those fees and costs would have been awarded as sanctions pursuant to 11 U.S.C. § 105 or the inherent power of the court. At no point would the Florida Bankruptcy Court have had the opportunity or the authority to address whether appellants were entitled to attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1) on the basis that the involuntary petition, filed in the Michigan Bankruptcy Court, had been dismissed.

### C. Collateral Estoppel/Issue Preclusion

■■■ Res judicata should not be confused with as collateral estoppel, sometimes called issue preclusion. Issue preclusion "only 'preclude[s] relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" *Sanders*

*Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 480 (6th Cir. 1992) (quoting *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir.1990)).

Here, the parties dispute whether the any issues of fact or law raised in this action were actually litigated and decided in the Florida Bankruptcy Court. As discussed above, this court finds that no issue presented in this appeal was ever litigated in the Florida Bankruptcy case given the fundamental differences between the two actions with respect to the legal basis for each action, the relief sought, and the standards governing the respective cases. The issues of fact and law in this case involve whether appellants are entitled to attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1) with respect to Adell's post-award conduct and those issues were not actually litigated or decided as part of the Florida Bankruptcy case.

### V. Conclusion

For the reasons discussed above, this court recommends that Adell's motion be **DENIED** on the basis that Adell waived his preclusion arguments by failing to raise them in a timely manner and by failing to adequately address them in his motion. In the alternative, this court recommends that Adell's motion be denied on the basis that neither claim preclusion nor issue preclusion applies in this matter.

■■■ The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*,

638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

March 12, 2009.